## UNITED STATES

### v.

**Stephen E. OLINGER, 347–54–9644, Sonar Technician (Submarine) Second Class (E–5), U.S. Navy.**

**NMCM 92 02705.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 7 July 1992.

Decided 22 Jan. 1997.

---

LT Alice B. Lustre, JAGC, USNR, Appellate Defense Counsel.

LT James P. Benoit, JAGC, USNR, Appellate Defense Counsel.

LCDR Eric C. Price, JAGC, USN, Appellate Defense Counsel.

LT Scott A. Browne, JAGC, USNR, Appellate Government Counsel.

CDR James G. Weinmeyer, JAGC, USNR, Appellate Government Counsel.

LT David M. Harrison, JAGC, USNR, Appellate Government Counsel.

Before DOMBROSKI, C.J., and LUCAS and OLIVER, JJ.

LUCAS, Judge:

This case raises an important issue regarding the legal effectiveness of an action by the Secretary of the Navy, through the Navy Clemency and Parole Board [hereinafter NCPB] to remit an approved punitive discharge and substitute therefor an administrative separation before a case is reviewed by this court pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1994)[hereinafter UCMJ]. We hold that the action by the NCPB under these facts is final and binding on convening authorities and this court.

A review of the facts is necessary for a complete understanding of our decision to apply corrective action to the sentence.

In the Fall of 1992, pursuant to his guilty pleas before a general court-martial, military judge alone, the appellant was convicted of committing seven violations of Title 18, U.S.C. §§ 1465 and 2252, brought under Article 134, UCMJ, 10 U.S.C. § 934, for distributing or receiving obscene material or child pornography in interstate commerce.

The appellant's adjudged sentence included a dishonorable discharge, total forfeitures, reduction to pay grade E–1, and confinement for 4 years.

In his November 1992 post-trial action pursuant to Article 60, UCMJ, 10 U.S.C. § 860, and in accordance with the terms of a pretrial agreement, the convening authority gave the appellant some forfeiture and confinement relief and mitigated the dishonorable discharge to a bad-conduct discharge.

In April 1993, the NCPB remitted the appellant's approved punitive bad-conduct discharge and substituted therefor an administrative, general discharge. *See* Appendix A. In May 1993, the NCPB also directed that the appellant be released from posttrial confinement into a parole status.

The record indicates that following his release from confinement and into a parole status, the appellant was gainfully employed in a civilian job, participated in a counseling program designed for this type of offender, and appeared to have violated no condition of his parole.

Subsequent to the NCPB actions remitting the bad-conduct discharge and releasing the appellant from post-trial confinement into a parole status, the record was filed with this court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. This court was not informed of any of the actions by the NCPB. We note at the outset that, notwithstanding the NCPB action remitting the bad-conduct discharge, this court acquired jurisdiction to review the case under Article 66(b), UCMJ, 10 U.S.C. § 866(b). Jurisdiction under Article 66(b), UCMJ, 10 U.S.C. § 866(b), is dependent solely upon the sentence approved by the convening authority and whether appellate review has been waived or withdrawn. Jurisdiction is not based upon actions of the NCPB.

After reviewing the case, in a 30 August 1994 published opinion, we set aside all but two of the guilty findings and the sentence and authorized a rehearing on both the findings and sentence. *United States v. Olinger,* 41 M.J. 615 (N.M.C.M.R.1994).

After remand, the rehearing convening authority, who was not the original convening authority, elected to proceed with a rehearing on the sentence only. In May 1995, the sentencing rehearing was conducted for the affirmed guilty findings which included a single specification each of receiving child pornography and distributing obscene material, both in interstate commerce.

At the time of the sentencing rehearing, the appellant's original trial defense counsel was no longer on active duty and a substitute defense counsel had been appointed. Posttrial affidavits from the appellant and substitute defense counsel indicate that the substitute counsel was aware of the earlier NCPB actions but made a conscious decision not to present that information to the rehearing court-martial (military judge alone), believing either that evidence of the NCPB actions was inadmissible, or, for tactical reasons, that a more favorable sentence from the judge would result if he was ignorant of the NCPB actions. Additionally, there is nothing in the record indicating that the rehearing convening authority, staff judge advocate, or trial counsel were aware of the NCPB actions.

At the sentencing rehearing, citing RULE FOR COURTS-MARTIAL 810(d), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.], the military judge ruled that the maximum sentence for the rehearing would be the original adjudged sentence as reduced by the original convening authority. The sentence subsequently adjudged at the rehearing consisted of confinement for 9 months, reduction to pay grade E–1, and a bad-conduct discharge, which was less severe than the sentence approved by the original convening authority.

The substitute defense counsel submitted a post-rehearing clemency petition to the convening authority on behalf of the appellant. *See* Art. 38(c), UCMJ, 10 U.S.C. § 838(c); R.C.M. 1105. However, the substitute counsel did not inform the convening authority of the NCPB actions. In an affidavit, the substitute defense counsel indicates that a conscious, tactical decision was made to withhold that information, under the belief that clemency would be more likely if the convening authority did not have that information. There is no evidence in the record that the rehearing convening authority was otherwise made aware of the NCPB actions.

In his September 1995 action on the rehearing sentence, the convening authority approved the new adjudged sentence and

ordered it executed, including the bad-conduct discharge. That part of the convening authority's action purporting to execute the punitive discharge at that point in time was a nullity as the rehearing sentence was not yet fully reviewed and affirmed as final. Art. 71(c), UCMJ, 10 U.S.C. § 871; R.C.M. 1113. *See United States v. McGee,* 30 M.J. 1086, 1088 (N.M.C.M.R.1989).

The case was then returned to this court for further review under Article 66, UCMJ, 10 U.S.C. § 866.

In Assignment of Error I,[1] the appellant claims that he was denied effective assistance of counsel because his trial defense counsel failed to notify the rehearing court-martial or convening authority of the NCPB clemency action remitting the punitive discharge. In its response to that assigned error, the Government, among other things, argues that when this court, in August 1994, set aside the original sentence, the April 1993 NCPB action remitting the bad-conduct discharge became a nullity. The Government cited no authority for such an important proposition, so we specified that as an issue.[2] The appellant was subsequently given leave to file a Supplemental Assignment of Error.[3] Assignment of Error I, the Supplemental Assignment of Error, and the specified issue were subsequently argued orally.

There are four assignments of error and one supplemental assignment of error to be resolved by this court. Because of our

holding regarding our specified issue and our conclusion that the associated Supplementary Assignment of Error has merit requiring relief, Assignment of Error I, alleging ineffective assistance by the substitute defense counsel, becomes moot. Similarly, because of our resolution regarding the sentence in this case, Assignment of Error IV also becomes moot. Remaining for our consideration and resolution are Assignments of Error II and III, and the Supplemental Assignment of Error.

■ We start with Assignment of Error II, which alleges that the Government wrongfully refused to provide the defense access to a Naval Criminal Investigation Service [hereinafter NCIS] investigation report prior to the sentencing rehearing. Prior to the rehearing, the substitute defense counsel served a standard discovery request on the trial counsel. Among other things, the substitute defense counsel specifically asked for a copy of all investigative reports. In a response to that discovery request, the trial counsel indicated that investigative reports were "not relevant" because the rehearing was on sentencing only. At the rehearing, the substitute defense counsel made a timely motion to compel production of investigative reports. This time, the trial counsel indicated that the only NCIS investigation reports were contained in the record of trial and that the substitute defense counsel had been provided with a copy of the record of trial. The

1. I. APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL POSTTRIAL WHEN TRIAL DEFENSE COUNSEL FAILED TO NOTIFY THE CONVENING AUTHORITY, PRIOR TO HIS TAKING ACTION ON THE SENTENCE, THAT THE SECRETARY OF THE NAVY HAD REMITTED THE BAD–CONDUCT DISCHARGE PREVIOUSLY AWARDED APPELLANT.

II. THE FAILURE OF THE GOVERNMENT TO DISCLOSE THE COMPLETE NCIS INVESTIGATION, PURSUANT TO A SPECIFIC DEFENSE DISCOVERY REQUEST, DEPRIVED APPELLANT OF DUE PROCESS AND PREVENTED THE TRIAL DEFENSE COUNSEL FROM EFFECTIVELY REPRESENTING APPELLANT AT HIS SENTENCE REHEARING.

III. APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL WHERE THE CONVENING AUTHORITY FAILED TO CONDUCT A REHEARING ON

SENTENCE UNTIL ALMOST EIGHT MONTHS AFTER THE RECORD OF TRIAL HAD BEEN RETURNED TO THE CONVENING AUTHORITY. (Citations omitted.)

IV. APPELLANT'S SENTENCE IS INAPPROPRIATELY SEVERE GIVEN APPELLANT'S OUTSTANDING RECORD AND UNDER THE CIRCUMSTANCES OF THIS CASE.

2. WHEN THIS COURT SET ASIDE APPELLANT'S SENTENCE ON 30 AUGUST 1994, DID THE 14 APRIL 1993 NCPB DECISION BECOME A NULLITY?

3. THE CONVENING AUTHORITY ERRED BY APPROVING A BAD–CONDUCT DISCHARGE WHERE PRIOR TO THE DECISION OF THIS COURT AUTHORIZING A REHEARING ON SENTENCE, THE SECRETARY OF THE NAVY (A HIGHER AUTHORITY) HAD ORDERED APPELLANT'S BAD–CONDUCT DISCHARGE REMITTED. (Citations omitted.)

substitute defense counsel contended that only part of a NCIS report was in the record of trial. The trial judge indicated that he had not examined the record of trial, but concluded that the trial counsel had disclosed everything that was required to be disclosed. In the post-rehearing clemency submission, the substitute defense counsel complained to the convening authority that the NCIS report was never disclosed. In the assigned error, the appellant renews his claim. In its reply to the assigned error, the Government again contends that the NCIS report is in the record of trial, which was provided to the substitute defense counsel.

A misuse of the term "record of trial" by at least one of the parties seems to have created needless confusion and litigation. The court-martial record of trial for the appellant's case consists of the *verbatim* transcript, charge sheet, convening order, convening authority's action, exhibits received in evidence, and appellate exhibits. R.C.M. 1103(b)(2). Matter **attached to the record of trial** includes, among other things, an Article 32, UCMJ investigation report, when not used as an exhibit at trial. R.C.M. 1103(b)(3)(A)(i). Such is the case with the appellant's record. What appears to be a copy of at least one and perhaps two complete NCIS reports for this case is attached to the record of trial as Investigating Officer's Exhibit 9 in the Article 32, UCMJ, investigation report.

When the trial counsel and Appellate Government Counsel indicated that the requested report was in the record of trial, they were not technically correct. The requested report was **attached to** the record of trial. Apparently the substitute defense counsel and appellate defense counsel applied the literal meaning of the term and concluded that the report was not in the record of trial. Counsel were talking at cross purposes because of a simple misunderstanding and less than ideal communication. However, what is important is that the requested report was in fact made available to the substitute defense counsel prior to the rehearing. All that counsel needed to do was read all the attachments to the record of trial. We do not view

this as an onerous proposition. Assignment of Error II is therefore without merit.

■ The pleadings regarding Assignment of Error III are somewhat confused. The appellant alleges that he was deprived of his **constitutional** right to a speedy trial because the sentencing rehearing was not conducted for "almost eight months" after the case was remanded. Despite alleging solely a constitutional speedy trial violation, the appellant cites cases in which the issue was whether the R.C.M. 707 speedy trial rule applied at rehearings. The cited cases do not address a violation of constitutional speedy trial rights. Similarly, the Government's response to the assigned error cites cases only dealing with the R.C.M. 707 speedy trial rule. The Government also cites R.C.M. 907(b)(2)(A) for the proposition that the appellant waived his right to a speedy trial by failing to raise the issue at the sentencing rehearing.

In an abundance of caution, we will assume that the appellant is contending that both his constitutional and regulatory (R.C.M. 707) rights to a speedy trial (rehearing) were violated. We examine the R.C.M. 707 issue first.

The record indicates that on 19 September 1994, the Judge Advocate General of the Navy signed a letter of transmittal addressed to the original convening authority that effectively remanded the case to the field for a rehearing. The record does not indicate when the original convening authority received the record and transmittal letter or when the rehearing convening authority received that material. Referral to a sentencing rehearing took place on 5 January 1995. As indicated above, the rehearing occurred on 8 May 1995. No claim was made by the appellant at the rehearing that his R.C.M. 707 rights had been violated.

At the time of the appellant's rehearing, Change 5 to the MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter MCM] was in effect. Change 5 to the MCM implemented R.C.M. 707(b)(3)(D) which expressly addresses the applicability of the 120–day rule for rehearings. We note that for the cases cited by both parties regarding this assigned error, Change 5 was not yet in

effect and R.C.M. 707 was silent with respect to its applicability to rehearings. Those cited cases are therefore of limited use. *See* however, the footnote by the Air Force Court in the cited case of *United States v. Wales*, 35 M.J. 501, 502 (A.F.C.M.R.1992), regarding that court's view of the applicability of the newly-implemented R.C.M. 707(b)(3)(D) for sentencing-only rehearings.

Under R.C.M. 707(b)(3)(D), the 120–day clock starts for rehearing purposes when the "responsible" convening authority receives the record of trial with the authorization for a rehearing. For two reasons, we need not decide whether the original convening authority or the rehearing convening authority was the responsible convening authority in this case, as that term is used in R.C.M. 707(b)(3)(D).

First, we agree completely with the footnoted reasoning of the Air Force Court in *Wales* that R.C.M. 707 does not apply to sentencing-only rehearings. By its plain language, R.C.M. 707 requires that an accused be arraigned within a certain time period. R.C.M. 707(a), 707(b)(1). There is no allegation that the appellant's right to a speedy arraignment was violated at his original trial. There is no express arraignment at a rehearing on sentencing only. We are not inclined to hold that any particular event occurring either before or during a sentencing-only rehearing is, as a matter of law, the equivalent of arraignment for R.C.M. 707 purposes. Additionally, by its terms, the only remedy authorized for an R.C.M. 707 violation is dismissal of the charges. R.C.M. 707(d). Such a remedy at a sentencing-only rehearing would seem to be excessive, as the only issue before that rehearing court-martial is sentencing.

Second, even if the rule applied, any R.C.M. 707 issue was waived by the appellant's failure to raise it at his sentencing rehearing. R.C.M. 707(e), 905(e), 907(b)(2)(A).

■ Regarding the constitutional issue, we note that prior to being recalled from appellate leave for his sentencing rehearing, the appellant was on parole and gainfully employed in a civilian job. He was not placed in pretrial confinement for the rehearing. The appellant has not alleged that he was in any way prejudiced by the time needed to conduct the rehearing once the responsible convening authority received the case. Under the circumstances of this case, we find no violation of the appellant's constitutional right to a speedy trial, assuming that such a concept applies at a sentencing-only rehearing. Assignment of Error III is therefore also without merit.

The Supplemental Assignment of Error and specified issue require us to examine the clemency powers of the Secretary of the Navy as they relate to court-martial sentences. The issue raised in the appellant's case is apparently a matter of first impression.

■ The appellant maintains that when the NCPB remitted his bad-conduct discharge and substituted therefor an administrative separation, the punitive discharge was immediately extinguished and ceased to exist. He argues that any subsequent action by a rehearing court-martial, convening authority, or this court purporting to adjudge, approve, or affirm the bad-conduct discharge would therefore be a nullity.

The Government contends that any action by the NCPB purporting to remit a punitive discharge must be deemed to be conditional, pending finality of the appellate review process. The Government argues that when this court set aside the original approved sentence and authorized a rehearing, the earlier NCPB action remitting the punitive discharge became a nullity.

We begin by examining the NCPB action document enclosed as Appendix A. That document cites Secretary of the Navy Instruction 5815.3G of 25 Nov. 1985; Subj: DEPARTMENT OF THE NAVY CLEMENCY AND PAROLE REVIEW [hereinafter SECNAVINST], as authority for the NCPB action. By its express language, the NCPB document is clearly directive in nature, as opposed to being in the nature of a recommendation. We note that the document is signed for the Secretary of the Navy.

We next turn to the SECNAVINST. Appendix C of the SECNAVINST is a listing of

congressional authority for Secretarial clemency powers. That listing includes 10 U.S.C. § 874(a), which is Article 74(a), UCMJ, and 10 U.S.C. § 953. Both of those statutes specifically provide congressional power to the Secretary of the Navy to remit any part of an unexecuted court-martial sentence, either personally pursuant to Article 74, UCMJ, 10 U.S.C. § 874, or through a Secretarial "system" pursuant to 10 U.S.C. § 953. It is clear from paragraph 3 of the SECNAVINST that the NCPB is the "system" established by the Secretary of the Navy pursuant to 10 U.S.C. § 953.

We next examine the pertinent provisions of the SECNAVINST to determine their relationship to the military justice system. Paragraph 4a indicates that NCPB decisions are final, subject to certain oversight and review that, upon examination, do not apply in this case. Section 101 of the SECNAVINST indicates that the NCPB actions are independent of clemency review conducted by general court-martial convening authorities. Section 201e indicates that NCPB decisions are final and must be promptly executed by appropriate commanders, except in situations that, upon examination, do not apply in this case. Section 305 requires the appropriate commander to issue a supplementary court-martial order implementing action by the NCPB modifying a sentence. We note that a supplementary court-martial order was not issued in this case. Section 307 requires convening authorities who independently grant clemency in a case under review by the NCPB to notify the NCPB of such action. Section 308 prohibits execution of a punitive discharge until NCPB reviews the case or such review is waived by the servicemember.

Section 502 expressly indicates that the NCPB acts for the Secretary of the Navy when remitting a punitive discharge. Section 503 permits the NCPB to grant clemency, as opposed to merely making clemency recommendations, except in certain classes of cases inapplicable to the appellant's case. Appendix B to the SECNAVINST designates those individuals required to be notified of a NCPB decision. When comparing that list to the NCPB action document in the

appellant's case, it appears that not all the individuals required to be notified that the bad-conduct discharge was remitted were actually notified. This oversight probably resulted in the issue being raised in this case. We have no reason to believe that the NCPB action document would have been intentionally disregarded had all the participants in this case been notified of the NCPB clemency action.

We conclude that Congress has provided the Secretary of the Navy with broad clemency powers to affect **unexecuted** parts of a court-martial sentence. Those powers are not limited or conditioned by the status of a court-martial case in the appellate review process. *See also* Art. 76, UCMJ, 10 U.S.C. § 876, and R.C.M. 1206(b). We find nothing in the pertinent enabling statutes, the SECNAVINST, or the UCMJ that even hints at such a proposition. We see no conflict between the appellate review process and the activities or actions of the NCPB. Instead, we view them as complementary. So long as a case is properly before the Secretary's NCPB, as was the appellant's, and so long as the NCPB acts in accordance with the SECNAVINST, as it did in this case, the NCPB has the power to remit an unexecuted punitive discharge. Neither the enabling statutes nor the SECNAVINST restrict the NCPB to granting clemency before a case is filed with this court for review, and we contemplate no such restriction. We hold that when the NCPB remitted the appellant's punitive discharge, that discharge ceased to exist. R.C.M. 1108(a). Although we had jurisdiction to review the case, the sentence we reviewed actually no longer included a punitive discharge. It follows that the maximum authorized sentence at the rehearing did not include a bad-conduct discharge. It was error for that rehearing court-martial, military judge alone, to conclude otherwise. It also follows that the rehearing convening authority erred by approving a sentence that included a bad-conduct discharge. *See* R.C.M. 810(d).

■ Although we need not resolve it on this basis, there is another reason why the Supplementary Assignment of Error has merit requiring relief. Even if we assume

that the rehearing court-martial was free to adjudge a bad-conduct discharge, R.C.M. 810(d) would prohibit the rehearing convening authority from approving a sentence in excess of, or more severe than, a sentence ultimately approved by the original convening authority or higher authority. The Secretary of the Navy is a superior general court-martial convening authority. Art. 22(a)(4), UCMJ, 10 U.S.C. § 822(a)(4). We see no reason to conclude, as the Government suggests, that the Secretary is a higher authority as that term is used in R.C.M. 810(d) when exercising powers of clemency pursuant to Article 74, UCMJ, 10 U.S.C. § 874, but not a higher authority when exercising clemency powers pursuant to 10 U.S.C. § 953 (NCPB). That being the case, it was error for the rehearing convening authority to approve the bad-conduct discharge because by doing so he approved a sentence more severe than the original approved sentence as reduced by higher authority.

We answer the Specified Issue in the negative. The NCPB action remitting the unexecuted punitive discharge did not become a nullity when we set aside the original approved sentence. For the reasons described above, the Supplementary Assignment of Error has merit.

We already affirmed the findings of guilty that were the subject of the sentencing rehearing. We need not again affirm those findings. We see no need to order another sentencing rehearing. We specifically find that the sentence we affirm is appropriate.

Accordingly, except for the bad-conduct discharge, the sentence approved by the rehearing convening authority is affirmed. The decision of this court and the action of the NCPB remitting the bad-conduct discharge and substituting therefor a general discharge will be correctly reflected in a supplementary promulgating order.

Chief Judge DOMBROSKI and Judge OLIVER concur.