UNITED STATES

v.

**Robert E. DEDERT, Jr., Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 9900629.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Decided 28 March 2001.

LT Hardy Vieux, JAGC, USNR, Appellate Defense Counsel.

LCDR Frank M. Doherty, JAGC, USNR, Appellate Government Counsel.

Maj Edward C. Durant, USMC, Appellate Government Counsel.

Before DORMAN, Senior Judge, NAUGLE and PRICE, Appellate Military Judges.

DORMAN, Senior Judge:

The appellant was tried by a general court-martial composed of officer and enlisted members. Following mixed pleas, the military judge convicted the appellant, consistent with his pleas, of a breach of the peace, assault consummated by a battery, and wrongful use of another's military identification card. Contrary to his pleas the members found the appellant guilty of language the appellant had excepted from his guilty pleas concerning the breach of the peace and the assault consummated by a battery [1], and of an additional assault consummated by a battery. The appellant's offenses violated Articles 116, 128, and 134, Uniform Code of

---

1. By his guilty pleas the appellant excepted language for both of these specifications alleging that he had struck his female victim in the face with his fist while holding a glass in the hand he struck her with. The Government went forward with its case as charged, and the appellant was convicted of all offenses as charged.

Military Justice, 10 U.S.C. §§ 916, 928, and 934. The approved sentence includes confinement for two years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge.[2]

We have carefully reviewed the record of trial, the appellant's two assignments of error, and the Government's response. We have also considered the excellent oral arguments presented by both appellate counsel on 1 March 2001 at the Naval Justice School in Newport, Rhode Island. While we strongly discourage the type of post-trial involvement engaged in by the trial counsel in this case, following our review, we conclude that no error was committed in the post-trial processing of this case. We however, do agree with the appellant that the adjudged and approved sentence was excessive. Following our corrective action, we conclude that the findings and sentence, as modified herein, are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

After trial the appellant put together an extensive clemency package that he submitted to the convening authority [CA]. The clemency package contained 38 enclosures. It was submitted on 28 December 1998. The request for clemency was prepared by the appellant's trial defense counsel [TDC] and was addressed to the CA. There was no "via" block contained in the TDC's letter, submitted in the standard naval letter format. In the request for clemency, the appellant requested that his dishonorable discharge be mitigated to a bad-conduct discharge and that confinement in excess of 12 months be suspended.

On 25 January 1999 the trial counsel [TC] in this case sent a letter to the CA. It, too, was not addressed "via" anyone. The subject of this letter was the appellant's clemency request. While much of the information contained in the letter is factual, it also contains the TC's personal opinion about the

nature of the appellant's crimes, characterizing them as "brutal." He also offered his apparently unsolicited opinion concerning the appellant's request for clemency. Specifically, the TC told the CA that:

The defense's request for clemency is without merit. The accused has clearly demonstrated his violent nature and the assaults in this case were both brutal and unprovoked. More importantly, a general court-martial composed of both officer and enlisted members listened to all the evidence in this case. They believed their sentence to be appropriate and just. I concur.

TC letter of 25 Jan 1999 at 2.

On 2 February 1999 the staff judge advocate [SJA] prepared his recommendation [SJAR] to the CA. He attached both the clemency request and the TC's letter as enclosures to the SJAR. In the body of the SJAR the SJA made these comments concerning the two enclosures:

In enclosure (1), the Defense Counsel requests that you suspend confinement in excess of 12 months and that you approve a bad-conduct discharge instead of the adjudged dishonorable discharge. In support of this request, the Defense Counsel includes 38 enclosures containing favorable letters from former Officers in Charge, family, and friends. You must carefully consider these matters prior to taking action in this case. Encl (2) contains the Trial Counsel's rebuttal to the clemency request. He draws your attention to the accused's civilian conviction for an assault with a pipe on another person which occurred after the unprovoked assaults for which he was found guilty at this court-martial.

Staff Judge Advocate's Recommendation of 2 Feb 1999 at 2–3. The SJA then went on to recommend to the CA that no clemency be granted in this case, and that the CA approve the adjudged sentence. The SJAR was served on the TDC on 4 February 1999. On that same day the TDC executed a First

---

2. On 15 July 1999, the Naval Clemency and Parole Board took action in the appellant's case and ordered the adjudged and approved dishon-

orable discharge mitigated to a bad-conduct discharge. The Board also ruled that the appellant was to be offered "VA treatment."

Endorsement on the Receipt For A Copy Of The SJAR, indicating that he did not desire to submit matters pursuant to RULE FOR COURTS-MARTIAL 1106, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). On 16 February 1999, the CA took action in this case. Following the advice contained in the SJAR, the CA approved the sentence as adjudged.

### Post–Trial Error

In his first assignment of error the appellant seeks a new SJAR and CA's Action. He seeks this relief because he believes that it was prejudicial error for the SJA to forward the TC's letter to the CA as part of the SJAR. The appellant asserts that Article 6(c), UCMJ, 10 U.S.C. § 806(c), and R.C.M. 1106(b) prohibit the TC's post-trial involvement in this case. Those rules prohibit anyone who acted as the TC in a case from later acting as the SJA in the same case. Appellant's Brief of 18 Aug 2000 at 3. During oral argument, the appellant modified his argument to suggest that the TC's involvement in this case amounted to error *per se.* While we find the TC's post-trial meddling in this case to be troubling, we do not find prejudicial error.

■■■ Central to this case is the fact that the appellant did not object to or comment upon matters contained in the SJAR after it was served upon him and prior to the date of the CA's action. Thus any error regarding the SJAR was waived, unless that error rises to the level of plain error. *United States v. Kho,* 54 M.J. 63, 65 (2000); R.C.M. 1106(f)(6). Plain error in this context is quantitatively different, however, than plain error that occurs during trial. When plain error occurs during the trial itself, we will normally afford relief only where there has been error, the error was obvious, and the error materially prejudiced a substantial right of the appellant. *United States v. Powell,* 49 M.J. 460, 463–65 (1998). When plain error occurs in the posttrial processing of a case, however, we will afford relief where there has been

error, the error was obvious, and where the appellant makes a colorable showing of possible prejudice. *Kho,* 54 M.J. at 65 (citing *United States v. Wheelus,* 49 M.J. 283, 289 (1998)). Applying this standard of review to an alleged post-trial error that was not noted prior to the CA's action, we decline to grant relief. We do so because there was no clear error in this case and because the appellant has made no colorable showing of prejudice.

■■■ The appellant is absolutely correct in his argument that the individual who prepares the SJAR in a case may not have also served as the TC. *United States v. Johnson–Saunders,* 48 M.J. 74 (1998). There is no evidence that the TC in the appellant's case prepared the SJAR. Rather, the record indicates that the SJAR was signed by the SJA for the command.[3]

■■■ During oral argument, the Government suggested that it was appropriate for the TC to make a recommendation to the convening authority concerning clemency issues because the TC knows the case better than anyone else. We do not endorse this argument, but rather find that it runs contrary to the spirit of Article 6(c), UCMJ, and R.C.M. 1106(b). In an earlier case we cautioned against this very practice: "[I]t is not prudent to solicit or convey trial counsel's recommendation [or opinion] to deny clemency to the convening authority. By providing his recommendation that clemency is not warranted, it appears that trial counsel is giving advice." *United States v. Allison,* No. 9302066, 1995 WL 934928 (N.M.Ct.Crim.App. 5 May 1995)(unpublished op.). We once again issue that caution. We also find our position consistent with that of the Air Force Court of Criminal Appeals in *United States v. Spears,* 48 M.J. 768 (A.F.Ct.Crim.App. 1998).[4]

■■■ *Spears* also involved post-trial issues. In *Spears* the SJAR had been prepared by the SJA. By the time the SJAR was prepared, the TC was serving in a new billet, that of the assistant SJA. In that role she

---

3. Although the record does not reflect the rank of the SJA in this case, we recognize that the SJA was a Marine Colonel, and an experienced judge advocate.

4. A different issue in *Spears* was later overruled by *United States v. Owen,* 50 M.J. 629, 630 (A.F.Ct.Crim.App.1998).

prepared a summary sheet of the case, signed it as the assistant SJA, and forwarded both documents to the CA. In the summary sheet the TC recommended that the CA disapprove a request for waiver of automatic forfeitures. The court rejected the Government's argument that the TC had merely been acting in an administrative capacity. In the court's view Article 6(c) is "a rule of basic fairness which prevents a trial counsel from preparing any legal review for, or making any recommendation to, the convening authority at any stage of the post-trial process." *Spears*, 48 M.J. at 775.

We also take exception to the content of the letter prepared by the TC. In the letter the TC emphasized on several occasions that a panel of officer and enlisted members had tried the appellant. He told the CA that the members had "closely listened to all of the evidence" and that their findings were "well thought out." He advised the CA that the members arrived at a sentence after they considered the appellant's evidence. He offered his opinion that the adjudged sentence was not overly harsh or disproportionate.[5] In conclusion he characterized the appellant's assaults on the victim as "brutal," and once again reminded the CA that the members had listened to all of the evidence and rendered a sentence they believed to be appropriate. He then voiced his concurrence. Trial Counsel letter of 25 Jan 1999. What the TC did in this case is similar to what occurred in *United States v. Catalani*, 46 M.J. 325 (1997).

In *Catalani* the accused submitted a clemency request after the SJAR had been prepared. In the request, the accused attached numerous letters of support that were not contained in the record of trial. Upon receipt of these materials, the SJA prepared an addendum to his SJAR in which he recommended that no clemency be granted. In the addendum the SJA stated that all the matters in the clemency package had been offered by the defense at trial and that the "senior most military judge in the Pacific imposed a sentence that, in my opinion, was

both fair and proportionate to the offense committed." *Catalani*, 46 M.J. at 327. He then submitted the case to the CA for action without serving the addendum upon the defense. The Court of Appeals for the Armed Forces began its discussion with the following observation:

> The clear import of the SJA's addendum was that the convening authority should reject the request for clemency because "all the matters" submitted by the defense had been considered by a judge of considerable stature, who had adjudged a fair and proportionate sentence based, in part, on these same materials.

*Id.* at 327–28. Though not deciding whether the SJA's bolstering of his original SJAR upon the stature of the trial judge, our superior court found that since this new matter was not of a trivial nature, and was misleading, it was error to forward it to the CA without first serving it upon the defense. *Id.* at 328–30.

In this case the TC engaged in the same type of bolstering by his repeated reference to the "well thought out" decision of the members in this case. His letter is also misleading in that it suggests that the members had considered all the evidence, whereas the appellant's clemency request contained many documents that were not admitted at trial. While not legal error, in our view, unless the CA had specifically requested the opinion of the TC, the letter prepared in this case was inappropriate and detracted from the overall perception of fairness that should emanate from the military justice system. *See e.g. Spears*, 48 M.J. at 775. Once again we caution TC against injecting his or her personal opinion into either the court-martial itself or the post-trial matters in a case in which the TC participated.

The record does not indicate how the CA became aware of the appellant's request for clemency or the letter of the TC opposing clemency. If the CA had seen the TC's letter before he received the SJAR (it was addressed directly to him from the TC), the

---

5. This was obviously a subjective opinion from a source who was not neutral. Its validity is called into question by the action of Naval Clemency and Parole Board, taken even before review by this court.

SJA did not err in attaching the TC's letter to the SJAR and serving it upon the appellant. By doing so, the SJA gave the appellant the opportunity to object to the SJAR itself as well as to the TC's letter that was attached to it. This action put the TC's letter on the table for all to see.

For the reasons expressed above, if the CA had not seen the TC's letter prior to submission of the SJAR, it would have been better practice for the SJA to return the letter to the TC and advise the TC that he was perfectly capable of advising the CA concerning the action to be taken on the appellant's case. It, however, was not legal error for him to forward the letter to the CA so long as the appellant was also aware that the CA would be provided the letter for his consideration. Thus we do not find that there was error that was plain or obvious in this case, nor do we find that the appellant has presented a colorable claim of prejudice. Accordingly, we reject the first assignment of error.

### Sentence Appropriateness

In his second assignment of error, the appellant argues that a sentence that includes two years confinement and a dishonorable discharge is inappropriately severe given the appellant's documented rehabilitative potential. Appellant's Brief of 18 Aug 2000 at 7–10. We agree.

Initially we note that the appellant is no longer sentenced to a dishonorable discharge. Due to the action of the Naval Clemency and Parole Board, the discharge that is before us for review is a bad-conduct discharge. *United States v. Olinger*, 45 M.J. 644, 650 (N.M.Ct.Crim.App.1997).

■■■ We begin our analysis of this issue with the recognition that a court-martial is free to impose any legal sentence that it determines is appropriate. *United States v. Turner*, 14 C.M.A. 435, 437, 34 C.M.R. 215, 217, 1964 WL 4998 (1964); R.C.M. 1002. When a sentence is before us for review, we "may affirm ... the sentence or such part or amount of the sentence, as [we] find[ ] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Art. 66(c), UCMJ. Courts of Criminal Appeals are tasked with determin-

ing sentence appropriateness vice clemency. Clemency, which involves bestowing mercy, is the prerogative of the convening authority. *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A.1988); R.C.M. 1107(b). In deciding whether a sentence is appropriate, we look to see if it results from an "individualized consideration" based upon "the nature and seriousness of the offense and the character of the offender." *United States v. Rojas*, 15 M.J. 902, 919 (N.M.C.M.R.1983)(citing *United States v. Snelling*, 14 M.J. 267 (C.M.A. 1982)), *aff'd*, 20 M.J. 330 (C.M.A.1985). Applying those standards, we find the sentence to be inappropriately severe.

■■■ The appellant had been a military policeman. In December 1996, he was not yet 21 years old. To facilitate entry into a civilian nightclub in downtown Washington, DC, the appellant borrowed the military identification card of a fellow service member and entered the club. During the evening the appellant was attracted to a group of young women who were dancing together on the dance floor, and the appellant began dancing near them. He apparently was dancing so close to one of the women that she asked her friend for assistance in getting the appellant to move away. The record is clear that the eventual victim of the appellant's assaults in this case caught his attention and politely informed him that the women were not interested in any company, and that they were just enjoying a "girls' night out." The appellant took immediate exception to this information with rude and abusive comments. Additionally, he knocked a drink from the victim's hand and then punched her in the face while holding a glass in the hand he punched her with. This blow was forceful and resulted in a cut to her chin that required three stitches to close. She summoned security at the club and once again approached the appellant and he again stuck her on the face with his fist. The appellant's assaults upon his female victim were unprovoked.

In aggravation the Government introduced evidence that after the attack in the nightclub the appellant assaulted another individual with a pipe, in a totally separate incident. As a result of this latter assault, the appel-

lant was convicted by a civilian court for a misdemeanor assault and was sentenced to confinement. Prosecution Exhibit 3.

Apparently following his short period of confinement in a civilian jail, the appellant was assigned to duty with the legal assistance office at Marine Corps Headquarters. He served there for 11 months prior to being sentenced at his court-martial. During that period of time he performed superbly, and earned the support of the SJA to the Commandant, the Head of Legal Assistance for the Marine Corps, the Chief of Client Service in the legal assistance office, and numerous individuals who were clients in the legal assistance office. The record supports the conclusion that since the incident in the nightclub, and the second assault, for which he was punished by civil authorities, the appellant has made a commendable effort to turn his life around, to include taking classes on anger management and control of his alcohol problem. Concerning the issue of sentence appropriateness, we find it significant that the officer, who conducted the Article 32, UCMJ, investigation recommended that the appellant's case be referred to trial before a special court-martial.

Following our review of all the materials before us concerning the appropriateness of the sentence, we agree with the appellant that, in consideration of this offender and these offenses, two years confinement is excessive. Accordingly we will grant relief in our decretal paragraph.

### Conclusion

Following our review of this case the findings are approved. We affirm only so much of the adjudged sentence as extends to confinement for 12 months, forfeiture of all pay and allowances for 12 months, reduction to pay grade E–1, and a bad-conduct discharge.

Judge NAUGLE and Judge PRICE concur.