# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.R. MCFARLANE, K.J. BRUBAKER**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## TIMOTHY S. ZEPEDA
## CORPORAL (E-4), U.S. MARINE CORPS

## NMCCA 201300458
## GENERAL COURT-MARTIAL

**Sentence Adjudged:** 26 July 2013.
**Military Judge:** LtCol Chris J. Thielemann, USMC.
**Convening Authority:** Commanding General, 1st Marine Division (Rein), Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation:** LtCol D.R. Kazmier, USMC.
**For Appellant:** Daniel Conway, Esq.; Capt David Peters, USMC.
**For Appellee:** CDR James E. Carsten, JAGC, USN.

### 26 November 2014

```
---------------------------------------------------------
                 OPINION OF THE COURT
---------------------------------------------------------
```

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

Contrary to his pleas, a general court-martial consisting of officers and enlisted members convicted the appellant of two specifications of making a false official statement, one specification of sexual assault, and one specification of adultery in violation of Articles 107, 120, and 134 Uniform Code of Military Justice, 10 U.S.C. §§ 907, 920, and 934. The

appellant was sentenced to confinement for eight years and a dishonorable discharge.  The convening authority approved the sentence as adjudged and, except for the dishonorable discharge, ordered it executed.

The appellant now avers: (1) that the evidence against him was not legally and factually sufficient to support his conviction for sexual assault and adultery; and, (2) that his sentence was inappropriately severe.

After carefully considering the parties' pleadings, the appellant's allegations of error, and the record of trial, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

**Facts**

On Saturday, 10 November 2012, at approximately 1500, the appellant and other Marines with whom he had been deployed gathered together for a small party in room 365 of the barracks. Included in this group were Lance Corporal (LCpl) VH and his wife TH.  The group watched movies, drank alcoholic beverages, played music, and ate pizza.  Throughout the evening, TH drank beer and shots of hard liquor.  At around 2000 that night, after TH had consumed nine beers and a few shots of hard liquor, TH asked her husband to join her in the adjoining barracks room, 367, where they engaged in consensual sexual intercourse.[1]  After sexual intercourse, LCpl VH laid next to his still naked wife until she fell asleep, at which time he returned to the party through the shared bathroom.

Sometime thereafter, the appellant left room 365, entered room 367, locked the bathroom door and took off his clothes. Five minutes after the appellant left room 365, LCpl VH went through the shared bathroom to check on his wife, who was still asleep in room 367, only to find the adjoining bathroom door locked.  LCpl VH pounded on the bathroom door in an attempt to wake his wife.  Not getting any response from his wife, LCpl VH

---

[1] LCpl VH and LCpl EG shared barracks room 365, which was connected to barracks room 367 by a shared bathroom.  LCpl ME and LCpl AU had shared barracks room 367 until LCpl AU moved out on 10 November 2012, leaving LCpl ME as the sole occupant of barracks room 367 on the evening of the party. LCpl ME did not attend the party and room 367 was unoccupied when TH and her husband made use of the room.

and another Marine exited room 365, went to the catwalk outside the front door to room 367 and started pounding on the exterior door and window.  Hearing the commotion, TH woke up, felt the appellant on top of her and saw his face which was approximately one foot above her.  TH also felt the appellant's penis inside her vagina.  TH then pushed the appellant off of her, wrapped herself in the bed sheet and opened the front door to room 367.  When asked where he had been, the appellant stated that he went to room 367 to sleep.  LCpl EG asked the appellant to leave.  The following Monday, when questioned about the alleged sexual assault, the appellant indicated that he did not enter the barracks room where TH slept and that he did not have any sexual contact with her.

Additional pertinent facts are provided as necessary to discuss the appellant's assignments of error.

**Legal and Factual Sufficiency**

In his first assignment of error, the appellant alleges that the evidence presented at trial was legally and factually insufficient to sustain his conviction for sexual assault and adultery.  The appellant specifically contends that the Government failed to meet its burden at trial in that the victim, TH, "could not testify that she witnessed the penetration of her own vagina by [the appellant's] penis" and that there was no eyewitness or forensic evidence to support TH's claim of sexual assault.  Appellant's Brief of 4 Apr 2014 at 6-7.  We disagree with both contentions.

Standard of Review

We review questions of legal and factual sufficiency *de novo*.  *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  We review the legal sufficiency of the evidence by determining "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."  *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)).  The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the accused's guilt beyond a reasonable doubt."  *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006) (citing *Turner*, 25 M.J. at 325 and Art. 66(c), UCMJ), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007).  Beyond a

3

reasonable doubt, however, does not mean that the evidence must be free from conflict.  *Id.*

Elements of Sexual Assault and Adultery

In order to convict the appellant of sexual assault, Article 120(b)(2) requires that the Government prove beyond a reasonable doubt that the appellant "commit[ed] a sexual act upon another person when the person knows or reasonably should have known that the person is asleep."  In this case, the sexual act alleged in the specification was that the appellant placed his penis in the vagina of TH.  For adultery, the Government must prove that the appellant (1) had sexual intercourse with a certain person; (2) that, at the time, the accused or the other person was married to someone else; and (3) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces of a nature to bring discredit upon the armed forces.

Analysis and Discussion

LCpl VH testified at the appellant's trial and indicated that after he and his wife engaged in consensual sexual intercourse in room 367, he lay down next to his wife until she fell asleep.  He then left the room through the bathroom and went back to the party located in room 365.  TH gave the following testimony:

> Q: When you first began to become aware, your husband left the room and you fell asleep.  When you first started to become aware at that time, what was the first thing you remember hearing or seeing or otherwise experiencing?
> A: I just hear all the banging on the window from the catwalk.  I can hear my husband yelling my name, [the appellant's] name.  And then I can hear banging on the – through the head.
>
> Q: Were both of those things happening at the same time?
> A: I believe so.  I couldn't tell you.  It felt like everything was just going on so fast.  I do remember – I believe that it was banging on through the head.  I think my husband was trying to get in.  I believe he was just trying to come in through the head, but the door was locked because he couldn't get in. And from there I could just hear, it just felt

4

like everything was happening, and I think that's what had woken me up because it was so loud.

> Q: So at that time when you first heard these things, did you open your eyes at that point?
> A: Yes, sir. I started to adjust my eyes. I started to wake up and I was on my back. I opened my eyes and I saw [the appellant] on top of me.

> Q: Describe in detail what did you see?
> A: His face above me with his hands wasn't too terribly close.

> Q: You used your hands to sort of approximate that distance between your face and his?
> A: I would say maybe about a foot, maybe a little less than a foot.

Record at 442-43.

TH further testified that she could directly see the appellant's face and that she got a "whole visual of him." *Id*. at 443. TH additionally went on to say during direct examination:

> Q: And as you were beginning to hear these things and open your eyes, did you feel anything?
> A: Um, I felt him inside of me. From there it startled me the whole time him being that close. And then I think it was just kind of the fact of waking up. I've never been sexually assaulted before, so it was very shocking to me. . . . I think my whole body went into shock really quick. And being on top of me, his chest was not pressed into me, so I was able to move him off quick.

> Q: You said you felt him inside of you. Can you be more specific?
> A: His penis inside my vagina.

*Id*. at 444.

The appellant also contends that there was no forensic evidence or eyewitness testimony to support his conviction.

Immediately after the sexual assault, TH had a sexual assault examination conducted in which deoxyribonucleic acid

(DNA) samples from her vagina, underwear, and labia were collected. *Id*. at 556-68. Tests of those samples revealed the appellant's DNA on TH's labia and underwear. The appellant contends that the presence of his DNA on TH's underwear was a result of inadvertent transfer from the bed linens of LCpl AU's bed as the appellant had previously slept in the same bed in which TH was sleeping. Appellant's Brief at 7. We find this argument unpersuasive. Mr. AU, formerly LCpl AU, testified that his room was open for any member of the unit to use. Although Mr. AU indicated that the appellant had napped on his rack in the past, he had not hung out with him since after 25 October 2012. Mr. AU additionally indicated that when other Marines would use his rack to nap, they were fully clothed and on top of the covers. No DNA from Mr. AU or LCpl ME, the then-occupants of room 367, was found in the samples taken from the victim and her underwear.

Given these facts, a reasonable fact-finder could have found all of the essential elements for both sexual assault and adultery. Moreover, and with due regard for the fact that we did not observe the witnesses, we too are convinced of the appellant's guilt beyond a reasonable doubt. Accordingly, we find this assignment of error to be without merit.

**Sentence Severity**

In his other assignment of error, the appellant contends that his sentence is inappropriately severe. The appellant specifically asserts that his sentence to eight years confinement is inappropriately severe and asks this court to only affirm a period of confinement between four and six years.

Under Article 66(c), UCMJ, we independently review sentences within our purview and only approve that part of a sentence which we find should be approved. *United States v. Baier,* 60 M.J. 382, 384-85 (C.A.A.F. 2005). With that in mind, we note that "a court-martial is free to impose any legal sentence that it determines is appropriate." *United States v. Dedert*, 54 M.J. 904, 909 (N.M.Ct.Crim.App. 2001) (citations omitted). "When a sentence is before us for review, we 'may affirm . . . the sentence or such part or amount of the sentence, as [we] find correct in law and fact and determine[], on the basis of the entire record, should be approved.'" *Id.* (quoting Art. 66(c), UCMJ). "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy,* 26 M.J. 394, 395 (C.M.A. 1988). This requires

6

"'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and character of the offender.'" *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

In arguing that his sentence to eight years confinement is inappropriately severe, the appellant cites to other military Courts of Criminal Appeals (CCA) cases involving sexual assault type offenses in which those appellants received more lenient sentences. The appellant does concede, however, that this court is not required to engage in sentence comparison with specific cases "'except in those rare instances in which the sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoing *United States v. Ballard,* 20 M.J. 282, 283 (C.M.A. 1985)) (additional citation omitted). The appellant bears the burden of demonstrating that any cited cases are "closely related" to his or her case and that the sentences are "highly disparate." *Id*. The Court of Appeals for the Armed Forces, however, defines "closely related" as those offenses which include, but not limited to, co-actors involved in a common crime, service members involved in a common or parallel scheme, or involve some other direct nexus between the service members whose sentences are sought to be compared. *Id*. In that regard, we find that the appellant has not met his burden to show that his case and the cases cited in his brief, many of which involve other CCAs, are "closely related" requiring this court to engage in sentence comparison with those cases. We therefore decline to do so.

Finally, the appellant points to the fact that he completed multiple deployments and was awarded the Purple Heart Medal after being stabbed by a Taliban insurgent during hand to hand combat while deployed to Afghanistan. He also indicated at trial that he has a 14-month-old dependent son. Appellant's Brief at 13.

While we find these facts to be mitigating, they must be balanced against the nature and severity of the appellant's crimes. The appellant sexually assaulted the wife of a fellow Marine while her husband sat in the adjoining room. Moreover, he continued that assault even after her husband and fellow Marines began crying out TH's name and started pounding on the locked barracks room door.

After reviewing the entire record and the pleadings by both parties, we too find that the sentence is appropriate for this

offender and his offenses.  *Baier*, 60 M.J. at 384-85); *Healy*, 26 M.J. at 395-96; *Snelling*, 14 M.J. at 268.  Any consideration of appellant's requested relief would amount to an act of clemency which is left to the "command prerogative" of the convening authority.  *Healy,* 26 M.J. at 396.

## Conclusion

The findings and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court