*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

_____

Before
KING, STEPHENS, and GASTON
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Jesse E. TORRES**
Lance Corporal (E-3), U.S. Marine Corps
Appellant

**No. 201800335**

Decided: 31 August 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary
*upon reconsideration*

Military Judge:
Keith A. Parrella

Sentence adjudged 21 August 2018, by a special court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of military judge alone. Sentence approved by the convening authority: reduction to E-1, confinement for five months, and a bad-conduct discharge.

For Appellant:
*Lieutenant Commander Jacqueline Leonard, JAGC, USN*

For Appellee:
*Major Kelli O'Neil, USMC*
*Captain William Mossor, USMC*
*Lieutenant Jennifer Joseph, JAGC, USN (specified brief)*
*Lieutenant Joshua Fiveson, JAGC, USN (specified brief)*

————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

————————————

PER CURIAM:

Consistent with his pleas, Appellant was convicted of one specification of dereliction of duty; two specifications of wrongful sale of military property; and two specifications of larceny of military property, in violation of Articles 92, 108, and 121 of the Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 892, 908, 921 (2012) and sentenced by the military judge to reduction to E-1, confinement for five months, and a bad-conduct discharge. Appellant now claims that the portion of the sentence extending to a bad-conduct discharge is inappropriate.

## I. BACKGROUND

Appellant and three other Marines, all of whom worked in a supply warehouse at 3d Marine Raider Battalion, pleaded guilty in accordance with their pretrial agreements to charges involving stealing military property from that warehouse and selling it to a local pawnshop. Appellant's crimes consisted of stealing military equipment including multi-tools, knives, lights, and GPS wristwatches on divers occasions and selling that material to a local pawnshop. In exchange, Appellant admitted to receiving approximately $1,050.00.

He also admitted to helping his cohorts load additional military property—scores of rifle buttstocks and buttstock subassembly parts valued at $27,566.40—into a personally owned vehicle so that those cohorts could sell that property to the pawnshop. For this action, he pleaded guilty as an aider and abettor under Article 77, UCMJ, to stealing military property valued at greater than $500 and to wrongfully selling that same property. Finally, admitting that he was aware that his cohorts had stolen other military property from the warehouse, Appellant admitted to being derelict in the performance of his duties for not reporting those thefts.

At sentencing, the Government presented portions of Appellant's military personnel file, reports of the investigation into his misconduct, evidence

indicating the cost of the stolen military property, and the testimony of the Battalion Supply Officer, Major [Maj] November,[1] who testified about the operation of the warehouse, the procedures for processing gear to the Defense Reutilization and Marketing Office [DRMO], and the impact of Appellant's crimes on the unit. During cross-examination, trial defense counsel [TDC] asked Maj November if he permitted Marines to take military packs that were to be "disposed of" for their personal use. He said he did not. Defense counsel next asked Maj November if he permitted Appellant's cohorts to "change into civilian attire" and throw equipment scheduled for DRMO into "dumpsters out in the beach." Again, Maj November responded that he did not. On redirect, the Government asked Maj November whether he had "ever given [Appellant] or any Marine permission to take, for their own personal use, military property;" and whether Maj November had "ever told them to get rid of military property outside of the normal DRMO channels." He replied "no" to both questions. During Maj November's testimony, TDC made only one objection—on grounds of improper aggravation, speculation and foundation—which was sustained on foundational grounds.

However, at a later sentencing proceeding for one of Appellant's cohorts, Appellant claims Maj November agreed that he instructed Marines to throw unserviceable military property (e.g., "destroyed gym equipment" and "destroyed . . . nonmilitary clothing") in the trash since he was aware that such property "wouldn't be accepted by DRMO." In light of this later testimony, Appellant now argues that Maj November provided "false [and] misleading" answers at Appellant's trial such that this Court should "dismiss his testimony." And because Maj November was the primary source of aggravation evidence, the lack thereof should cause this court to doubt the appropriateness of a bad-conduct discharge.[2]

On appeal, this Court granted Appellant's motion to attach the transcript from Major November's testimony at the cohort's sentencing proceeding. We then resolved the matter against Appellant and issued an opinion on 13 April 2020 affirming the findings and sentence. However, later the same day, we withdrew that opinion and ordered the parties to submit briefs on whether the Court properly considered Maj November's testimony at that separate sentencing hearing, in light of the recent opinion by the United States Court of Appeals for the Armed Forces [CAAF] in *United States v. Jessie*, 79 M.J.

---

[1] We have used a pseudonym for the witness' last name.

[2] *See generally*, R. at 52-53.

437 (C.A.A.F. 2020). Having considered those briefs, the initial briefs, and the record of trial, we again affirm the findings and sentence.

## II. DISCUSSION

Sentencing authorities are free to impose any sentence they consider fair and just within the limits set by the Code or the President. *United States v. Dedert*, 54 M.J. 904, 909 (N-M. Ct. Crim. App 2001) (citing *United States v. Turner*, 34 C.M.R. 215, 217 (C.M.A. 1964)). However, we may "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved." UCMJ art. 66(c). This responsibility is "a sweeping Congressional mandate to ensure a fair and just punishment for every accused." *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005) (citation and internal quotation marks omitted). We review the appropriateness of a sentence de novo. *Id.* "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires this Court to give "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (*quoting United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

Appellant's argument that his bad-conduct discharge is inappropriate is founded upon his confidence that Maj November provided false testimony at his sentencing hearing. This confidence, in turn, is founded upon Appellant's interpretation of Maj November's testimony at Appellant's cohort's sentencing hearing.

In *Jessie*, the CAAF interpreted Article 66(c), UCMJ, and the statutory requirement for this Court to make legal and factual determinations "on the basis of the entire record." The court held that, as a general rule, military courts of criminal appeals may not consider evidence submitted for the first time on appeal because they are "outside the 'entire record.'" 79 M.J. at 445 (quoting UCMJ art. 66(c)). The CAAF noted some exceptions to this general rule, including "when doing so is necessary for resolving issues raised by materials in the record." *Id.* At 444. Appellant now claims that this evidence is properly considered under this exception since Maj November's testimony at his trial "failed the M.R.E. 403 balancing test because it was more

prejudicial than probative with regard to the evidence he offered in aggravation."[3] The Government counters that "Appellant's case does not involve an issue raised by but not fully resolvable on the Record alone," rendering this Court's consideration of the attachment inappropriate under *Jessie.*[4]

Assuming without deciding that we may properly consider the attachment, we are not persuaded that Maj November's answers at Appellant's trial, which were not objected to by Appellant's TDC, were either erroneously admitted or in any way inconsistent with his testimony in the cohort's trial and certainly not "false [and] misleading."[5] As Maj November explained when he responded that he had never told Marines to "get rid of military property outside of the normal DRMO channels,"[6] he was not then referring to the "garbage" mentioned later in another trial, but to "serviceable" military property.[7] Appellant's conflation of these two scenarios is misplaced.

Nor are we particularly sympathetic to Appellant's argument on appeal that "it is mitigating that the example set by the Supply Officer indicated that DRMO gear was not deserving of significant accountability or control."[8]

---

[3] Appellant's Br. on Specified Issue at 13.

[4] Gov't Br. on Specified Issue at 9.

[5] Appellant's Br. of 14 March 2019 at 13.

[6] R. at 53.

[7]
TC: Now, I want to talk about the context. So defense had asked you about your statement, you know, "Get rid of this gear," and that was specifically as to get rid of this garbage, this unserviceable equipment?

WIT: Absolute. [sic]. Yeah, that's what I was talking about.

TC: In another situations where maybe NCIS or maybe I asked you, it was with respect to, "Did you ever say [that] as to the items that were stolen [by] the accused?"

WIT: That's how I understood it.

TC: So to be clear, you never told him to get rid of brand-new Leatherman's?

WIT: Nope. . . .

TC: All right. Thank you, sir.

Appellant's Mot. to Attach, app. 1 (Transcript of Record at 110-11, *United States v. Delnevo,* Marine Corps Base Camp Lejeune, North Carolina (Oct. 10, 2018)).

[8] Appellant's Br. of 14 March 2019 at 12.

Even assuming lackadaisical management, Appellant admitted he was without justification or excuse when he abused his position of trust to profit from repeatedly stealing tens of thousands of dollars' worth of military property from the warehouse to which he was assigned, and stood silently by while others did the same. His serious crimes merited the balanced punishment he received.

### III. CONCLUSION

After reviewing the entire record and the pleadings by both parties, we determine that the approved findings and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. UCMJ arts. 59(a), 66(c). We also find that the sentence is appropriate for this offender and his offenses. Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court