**UNITED STATES**

v.

**Airman Robert E. SPEARS III, FR492–80–6436, United States Air Force.**

**ACM S29405.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 8 May 1997.

Decided 29 May 1998.

Appellate Counsel for Appellant: Major Michael L. McIntyre (argued), Colonel Douglas H. Kohrt, Major Ray T. Blank, Jr., and Major Margo Stone Newton.

Appellate Counsel for United States: Lieutenant Colonel Michael J. Breslin (argued) and Colonel Brenda J. Hollis.

Before PEARSON, Senior Judge, MORGAN and SPISAK, Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, Judge:

A military judge found appellant guilty, contrary to his pleas, of wrongful appropriation of a computer and two counts of writing bad checks. Consistent with his pleas, the military judge found appellant guilty of an additional count of writing bad checks. The judge sentenced appellant to a bad-conduct discharge, 5 months confinement, forfeiture of $600 pay per month for 6 months, and reduction to E–1. Appellant contends that it was error for the trial counsel (prosecuting attorney) to advise the convening authority concerning appellant's post-trial request for waiver of automatic forfeitures, that the deputy staff judge advocate improperly included new matter in his response to appellant's request to waive forfeitures, and that the staff judge advocate (SJA) erred by failing to inform the convening authority that he must consider any clemency matter submitted by appellant prior to taking action. Finding merit in appellant's first two assignments of error, we set aside the action and return the case to the convening authority for a new staff judge advocate's recommendation (SJAR) and convening authority's action.

### FACTUAL BACKGROUND

The facts of appellant's case are somewhat unusual and demonstrate how bad advice from uninformed sources can lead to personal disaster. Appellant, after serving only 13 months in the Air Force, was unhappy and wanted out. He received advice from various sources that he could not get out just because he wanted to, and he did not qualify for a voluntary administrative separation. Unfortunately, a friend informed appellant that, if he could demonstrate financial irresponsibility, the Air Force would probably discharge him. Appellant began to intentionally write bad checks to the base exchange (BX). However, whenever he received notice of a dishonored check from the BX, he would pay off the bad check so quickly that the BX never informed his commander.

Not getting the attention he wanted, appellant began to wait longer to pay off the bad checks. This led the BX to notify his commander, but the commander only counselled him and required him to receive financial advice. Appellant wrote a total of nine checks for $300 each and one for $275 to the BX, all to obtain cash which he set aside and used to pay back the bad checks. Because his plan wasn't working, appellant decided to write bad checks to Wal–Mart for the purchase of three computers, which he planned to return for cash refunds to pay off the checks after they bounced. He wrote three checks to Wal–Mart totaling over $5,500, then successfully returned the first two computers for cash refunds. When he was unable to return the third computer to Wal–Mart, he decided to sell it to a pawn shop to raise money but only received $600. He had paid $1492 for this computer.

By the time Wal–Mart began demanding payment from appellant, things were out of hand. He had spent much of the cash received from Wal–Mart and the pawn shop and could not cover the checks. Eventually, the Wal–Mart checks came to the attention of his commander. To appellant's dismay, his commander initiated court-martial proceedings for all the bad checks and wrongful appropriation of the pawned computer, not the administrative discharge appellant desired.

On May 16, 1997, one week after his conviction, appellant sent the convening authority a letter from jail requesting waiver of the automatic forfeiture of his pay so that the money could go to his family. On the same day, appellant's trial defense counsel wrote a separate letter to the convening authority making this same request. Both letters were routed through the base legal office.

Article 58b(a), Uniform Code of Military Justice (UCMJ), requires automatic forfeiture of two-thirds pay if the sentence of a special court-martial includes a bad-conduct discharge and any period of confinement. Automatic forfeitures of all pay and allowances apply in a general court-martial when the sentence includes confinement for more than six months or any period of confinement combined with a punitive discharge. 10 U.S.C. § 858b(a) (1996). This automatic forfeiture takes effect 14 days after the date on which the sentence is adjudged, and remains

in effect while an accused is in confinement unless the convening authority waives them. Article 58b(b), UCMJ. The convening authority may waive all or part of such automatic forfeitures for a period not to exceed six months and direct them to be paid to an accused's dependents.

Appellant's sentence included forfeiture of $600 pay per month for 6 months. Because this did not equal a full two-thirds of appellant's pay [1] and because his sentence included a punitive discharge and some period of confinement, Article 58b, UCMJ, required the automatic forfeiture of an additional amount of his pay up to the two-thirds pay per month jurisdictional limit of a special court-martial while the accused was in confinement. Both the adjudged and automatic forfeitures of pay became effective 14 days after his sentence was adjudged. Articles 58b(a)(1) and 57(a)(1)(A), UCMJ.

Following appellant's request for waiver of automatic forfeitures, the deputy SJA, Major DM, prepared the SJAR and, on May 30, 1997, served it on appellant.[2] The SJAR did not mention appellant's earlier waiver request even though it was still pending. Major DM next prepared a legal review of appellant's waiver request, dated June 2, 1997. That review informed the convening authority that appellant's wife had admitted, during a pretrial interview with Captain TM, to knowingly participating with her husband in writing bad checks. The convening authority was informed Mrs. Spears had concocted an incredible story during the interview that, if true, would have exonerated her husband of the offense involving the third bad check to Wal–Mart which appellant used to procure the computer he later pawned. The review further related that Captain TM had cautioned Mrs. Spears that lying in a court-martial constituted perjury, an offense punishable under state and federal law and that her admission to writing bad checks could subject her to prosecution in a civilian court. Finally, it provided that Mrs. Spears had declined to testify at trial, asserting her Fifth Amendment right against self-incrimination. The record reflects Mrs. Spears did, in fact, assert this right.

Based on the representations from trial counsel, the deputy SJA recommended the convening authority deny appellant's request for waiver of automatic forfeitures, stating:

> We recommend denial of AB Spears' request for waiver of forfeitures. Such a waiver would put money into the hands of his co-conspirator Mrs. Spears, who was clearly a knowing and willing participant in this $10,000 bad check writing scheme. It is unfortunate that the minor child of AB Spears will not receive the money, but the greatest tragedy of all is that this child may not receive the moral guidance she needs from her parents. Perhaps this will send a message to her parents. The wrongdoers do not profit. It is for this reason that we recommend that the request be denied.

This review ended by informing the convening authority to contact the deputy SJA or Captain TM if he had any questions.

On June 6, 1997, Captain TM prepared a staff summary sheet forwarding the deputy SJA's legal review to the convening authority and signed it in her capacity as assistant SJA, not as trial counsel. After summarizing appellant's request and his wife's involvement in appellant's crimes, Captain TM recommended that the convening authority deny appellant's waiver request. On June 10, 1997, the convening authority followed this advice and denied appellant's request to waive automatic forfeitures in favor of his

---

1. The interplay between Article 58b, UCMJ, and RULE FOR COURTS-MARTIAL (R.C.M.) 1003(b)(2) created a paradoxical situation in this case. At the reduced grade of E–1, appellant's base pay was $900.90 per month. Two-thirds of this amount was $600.60. Appellant's adjudged forfeitures of $600 pay per month was as close to two-thirds pay as the military judge could impose based on the R.C.M. 1003(b)(2) full dollar amount limit on sentences to forfeitures. However, it fell $.60 short of actually being two-thirds of his pay, thus triggering automatic forfeitures of the remaining $.60.

2. We note that the SJAR was served on appellant three days before the record of trial was authenticated by the military judge on June 2, 1997. Appellant failed to raise this issue on appeal and forfeited the issue, absent plain error, by failing to raise it in his response to the SJAR. Our resolution of appellant's other assigned errors moots this issue.

dependents. Neither the deputy SJA's legal review nor the staff summary sheet prepared by Captain TM were ever served on appellant or his counsel during the post-trial processing of the case.

On June 19 and June 20, 1997, appellant and his defense counsel submitted clemency letters to the convening authority. These letters did not raise any objection to the SJAR, or mention the earlier request for waiver of forfeitures which the convening authority had previously denied. The SJA did not prepare an addendum to his SJAR. *See* R.C.M. 1106(f)(7). Such an addendum would normally be the vehicle by which the SJA informs the convening authority that he must consider the defense submissions, and such advice was not contained in the SJAR itself. However, by motion of appellate government counsel, the convening authority subsequently submitted an affidavit to this court stating that he did receive the clemency letters submitted by appellant and defense counsel and considered those matters along with all attachments to them.

### CONVENING AUTHORITY'S POWERS UNDER ARTICLES 57(a) and 58b, UCMJ

In order to resolve the first two errors raised by appellant, we must first determine exactly what kind of animal an Article 58b, UCMJ, request for waiver is. Is it a clemency request requiring special handling in accordance with Article 60, UCMJ, or is it more akin to a request for deferral under Article 57(a)? We find that it is, indeed, a request for clemency which calls into play the processing requirements of Article 60, UCMJ.

The convening authority has statutory power to defer automatic pay forfeitures until he or she takes action and, at or prior to the time of action, to waive them in favor of dependents for up to six months. Articles 57(a)(2) and 58b(a) and (b), UCMJ. Article 57(a)(1)(A) and (B) provide that any forfeiture of pay or allowance or reduction in grade that is included in a sentence of a court-martial takes effect 14 days after the date on which the sentence is adjudged or the date on which the sentence is approved

by the convening authority, whichever is earlier. However, Article 57(a)(2) adds:

> On application by an accused, the convening authority may **defer** forfeiture of pay or allowances or reduction in grade that would otherwise become effective under paragraph (1)(A) **until the date on which the sentence is approved** by the convening authority. Such a deferment may be rescinded at any time by the convening authority.

(Emphasis added.)

By the terms of Article 58b(a)(1), UCMJ, the effective date of automatic forfeitures of pay, and any deferral thereof, is controlled by Article 57(a). Article 58b(b), UCMJ, states

> In a case involving an accused who has dependents, the convening authority or other person **acting under section 860 of this title (article 60) may waive** any or all of the forfeitures of pay and allowances required by subsection (a) for a period not to exceed six months. Any amount of pay or allowances that, except for a waiver under this subsection, would be forfeited shall be paid, as the convening authority or other person taking action directs, **to the dependents of the accused.**

(Emphasis added.) A convening authority acts "under" Article 60, UCMJ, when he or she takes action on the findings and sentence in a case. Article 60(c)(2) authorizes the convening authority to act on a sentence only after the accused has been served with the SJAR and provided an opportunity to submit clemency matters, "subject to regulations of the secretary concerned." 10 U.S.C. § 860(c)(2) (1994).

The pertinent "regulations of the secretary concerned" are found in Air Force Instruction (AFI) 51–201, Administration of Military Justice, ¶ 9.7.3 (3 October 1997). That paragraph provides that "the convening authority may waive any part or all of the *automatic* forfeitures under Article 58b, when the accused is actually serving a sentence to confinement, for up to six months at any time prior to action or when action is taken." (Emphasis in original.) This regulatory language clearly authorizes the convening au-

thority to waive automatic forfeitures prior to action. Because automatic forfeitures are triggered by the type of sentence adjudged, a convening authority "acts" on the sentence when deciding whether to waive such forfeitures. This calls into play the requirements of Article 60, UCMJ, and the procedural due process requirements flowing therefrom.

■ In summation, the convening authority may defer automatic forfeitures any time prior to action. Additionally, the convening authority may, prior to or on the date of action, waive automatic forfeitures for up to six months. This provides the convening authority the discretion to prevent the application of automatic forfeitures for longer than the commonly understood six month waiver period. It is important to remember that waived forfeitures may only be paid to the dependents of an accused, but deferred forfeitures are paid to the accused. The convening authority has no power to direct payment of deferred forfeitures to dependents.

■ Finally, we address the issue of forfeitures eligible for waiver by a convening authority. The statutory language clearly indicates that only those forfeitures of pay which are automatically taken thereunder are subject to waiver. We previously addressed this issue in an unpublished decision. *United States v. Hartig*, ACM 32460, 1998 WL 48562 (A.F.Ct.Crim.App. Jan. 16, 1998). Therefore, if an appellant in a general court-martial is sentenced to total forfeiture of all pay and allowances and the convening authority approves the total forfeitures in his action, there will be no automatic forfeitures under Article 58b. The same would be true if an appellant is sentenced to the maximum forfeiture of two-thirds pay in a special court-martial and the convening authority approves the sentence. However, the convening authority may **defer** any adjudged or automatic forfeitures, including total forfeitures.

■ The remaining question concerns the scope of waiver available if an accused is sentenced to less than the maximum possible forfeitures. Can the convening authority waive only that portion of the forfeitures which exceed the approved forfeitures adjudged by the court, or may he waive all forfeitures that the accused would have to pay if any part of the accused's pay is subject to automatic forfeitures? AFI 51–20, ¶ 9.7.3, provides that automatic forfeitures take precedence over adjudged forfeitures. We interpret this language to give the convening authority power to waive all forfeitures an accused faces when any part of those forfeitures is automatically taken pursuant to Article 58b. This interpretation provides the broadest application of Congress' apparent intent to benefit dependents of convicted military members. As we stated in *Hartig*, however, if an accused is sentenced to the maximum jurisdictional forfeitures in a general or special court-martial, the only way the convening authority could waive forfeitures would be to first disapprove part or all of the adjudged forfeitures. If the approved sentence then required application of automatic forfeitures, the convening authority could exercise his waiver authority.

### SUBMISSION OF MATTERS BY AN ACCUSED

■ Having analyzed the convening authority's power to act on requests for waiver of forfeitures, we now turn to appellant's assigned errors. Appellant was entitled to submit matters to the convening authority any time after the sentence was adjudged. R.C.M. 1105(a). Nothing required appellant to wait until he was served with a copy of the SJAR before making a submission. Appellant had the right to "submit to the convening authority any written matters which may reasonably tend to affect the convening authority's decision whether to disapprove any findings of guilty or to approve the sentence." R.C.M. 1105(b). These matters include clemency requests, such as appellant's request to waive the automatic forfeiture of pay imposed by Article 58b, UCMJ.

We have previously likened the convening authority's power to waive automatic forfeitures to clemency. *United States v. Clemente*, 46 M.J. 715, 720 (A.F.Ct.Crim.App. 1997). We reject the government's argument that appellant's request for waiver of forfeitures should not be considered a formal clemency request, under Article 60(b)(1),

UCMJ, and R.C.M. 1105(b), because it did not pertain to approval of the findings or sentence. Had appellant made his waiver request after service of the SJAR, the convening authority could have responded by helping the dependents without actually waiving forfeitures. He could have done so by disapproving those portions of appellant's sentence which generated the automatic forfeitures, or he could have disapproved or reduced the adjudged forfeitures to leave money available to the family. This clearly would have been an exercise of the convening authority's clemency powers and further convinces us that appellant's request must be viewed as one for clemency.

Of greater significance, however, is the source of the convening authority's power to waive automatic forfeitures. As already noted, it is found in Article 58b, UCMJ, which specifically links waiver to the convening authority's statutory clemency power. Article 58b, UCMJ, clearly states that the convening authority is "acting under" Article 60, UCMJ, when he waives forfeitures—the Article which gives the convening authority clemency powers.

We do note that R.C.M. 1105(d)(2) states "[s]ubmission of any matters under this rule [submission of clemency matters by accused] shall be deemed a waiver of the right to submit additional matters unless the right to submit additional matters within the prescribed time limits is expressly reserved in writing." Appellant did not reserve the right to submit additional matters in writing, and this could have been treated as a waiver. However, the SJA and convening authority did consider later matters which appellant submitted. We caution defense counsel to be aware of this limitation in order to protect the rights of their clients during the post-trial process, as many appellants submit requests for waiver or deferral of automatic forfeitures shortly after their trials and long before service of the SJAR on the defense.[3]

## ADVICE TO CONVENING AUTHORITY BY TRIAL COUNSEL

■ In appellant's case, the trial counsel prepared and signed a staff summary sheet containing a denial recommendation. This staff summary sheet was used to forward the legal review of appellant's request for waiver of automatic forfeitures to the convening authority. Appellant asserts this was error. Article 6(c), UCMJ, provides that no person who has acted as trial counsel "in any case may later act as a staff judge advocate or legal officer to any reviewing authority upon the same case." The convening authority for appellant's special court-martial was such a reviewing authority. R.C.M. 1106(b) also disqualifies trial counsel in a case from later acting as an SJA or legal officer to any reviewing or convening authority in the same case.

The Court of Military Appeals (now the United States Court of Appeals for the Armed Forces) has stated:

> The general principle underlying RCM 1106(b) on disqualification is that the legal officer or staff judge advocate providing a recommendation to the convening authority must be neutral. The recommendation of a biased legal officer could unfairly prejudice the convening authority's decision.

*United States v. Rice*, 33 M.J. 451, 453 (C.M.A.1991). We have held that, when the officer who served as trial counsel in a court-martial signed and transmitted to the convening authority an addendum to the SJAR, it was presumptively prejudicial and required the action of the convening authority be set aside where the accused had no opportunity to raise error. *United States v. Holt*, 38 M.J. 682, 683 (A.F.C.M.R.1993). Even if an accused has an opportunity to object, failure to do so will not waive the error. *United States v. Johnson–Saunders*, 48 M.J. 74 (1998). As in *Holt*, however, appellant was not aware of the trial counsel's involvement in the post-trial processing of his case and, thereby, was in no position to raise an objec-

---

**3.** Deferral of forfeitures until action is authorized by Article 57(a)(2), UCMJ. A request for deferral, unlike a request for waiver, is not a request for clemency because the convening authority approves or disapproves deferral requests under Article 57(a)(2), not Article 60, UCMJ. Thus, a deferral request would not raise the same concerns for defense counsel.

tion to it, much less knowingly waive the issue.

When the deputy SJA incorporated information obtained from the trial counsel into his legal review of appellant's request to waive automatic forfeitures, he did not violate this prohibition. The deputy SJA was entitled to convey this relevant information to the convening authority and to identify its source. However, when the trial counsel prepared and signed the staff summary sheet to the convening authority and made a specific recommendation for action, she violated Article 6(c). Because she was the trial counsel in the case, the fact she signed the staff summary sheet in her capacity as assistant SJA is of no consequence.

■ In this regard we reject the argument that Captain TM was merely acting in an administrative capacity by preparing a cover document for the deputy SJA's legal review. She made a signed recommendation to the convening authority on behalf of the SJA's office recommending against action favorable to the appellant. As trial counsel in the case, we hold she was barred from doing so. We interpret the proscription of Article 6(c), UCMJ, to establish a rule of basic fairness which prevents a trial counsel from preparing any legal review for, or making any recommendation to, the convening authority at any stage of the post-trial process concerning an accused's post-trial submission made under R.C.M. 1105 or a defense counsel's post-trial submission under R.C.M. 1106(f)(4).

### INCLUSION OF NEW MATTER IN LEGAL REVIEW

Appellant contends that the information in the SJA's legal review of his waiver request which addressed Captain TM's comments about appellant's wife's involvement in the crimes, must be treated as new matter under R.C.M. 1106(f)(7). R.C.M. 1106(f)(7) controls the interjection of new matter by the SJA during the post-trial review process and states "[w]hen new matter is introduced after the accused and counsel for the accused have examined the recommendation, however, the accused and counsel for the accused must be served with the new matter and given 10 days from service of the addendum in which to submit comments." The discussion to R.C.M. 1106(f)(7) states that "new matter" includes "discussion of the effect of new decisions on issues in the case, matter from outside the record of trial, and issues not previously discussed." By its very location within a rule dealing with the post-trial recommendation of the SJA to the convening authority, it is hard to conceive how the rule would require service of new matters on an accused when those matters were not part of the SJAR process. All cases we are aware of that deal with this issue involve new matters raised in the SJA's addendum to the SJAR. *See generally United States v. Leal,* 44 M.J. 235 (1996).

■ Although we are not willing to extend the strict provisions of R.C.M. 1106(f)(7) to legal advice provided on issues which arise before the SJAR is written, we are willing to apply concepts of basic fairness and procedural due process to such situations. The clear purpose behind the rule was to give the defense an opportunity to respond to the SJA's position in post-trial legal advice provided to the convening authority. The rule on new matter obviously prevents the SJA from bringing up new issues from outside the record to the convening authority and getting the last say without the defense even knowing about it. When the rule was written, Articles 57(a) and 58b, UCMJ, did not exist and the issue presently before us could not be foreseen.

In appellant's case, the SJA did not even mention appellant's previous request for waiver of forfeitures when he wrote the SJAR. Because the legal review of that request had not yet been prepared, we are perplexed as to why the SJA didn't include appellant's request and the SJA's recommendation on that request in the SJAR. If that had occurred, the defense would have been put on notice of the legal office's position and any matter supporting it. Because the legal review of the waiver request was written after the SJAR, the SJA could have given the appellant notice of that review (and possibly trial counsel's involvement) by preparing an addendum to the SJAR and serving it on appellant for comment.

In fact, because the deputy SJA's legal review of appellant's waiver request was prepared after the SJAR was served on appellant, it could be viewed as an addendum to the SJAR which required service on appellant. Had this occurred, we strongly suspect that appellant might then have objected to the new information concerning his wife's alleged involvement in his crimes, responded to it, and once again raised his request for waiver of forfeitures. Because it appears appellant never knew of these issues until his appellate counsel discovered them as allied papers in the record of trial, he had no opportunity to reply during the post-trial processing of his case.

■ We can understand that the SJA and his staff would not contemplate the RULES FOR COURTS-MARTIAL requiring them to serve this review on appellant and his counsel. However, the deputy SJA raised substantial matters in his legal review which were clearly detrimental to appellant's request. The review attacked appellant's wife, calling her a co-conspirator and branded both as bad parents who set a poor moral example for their child. None of this matter was brought out during the trial and, therefore, would not have been in the record for the convening authority to review. If this matter had been raised in an addendum to an SJAR, it would have clearly been new matter on which appellant would have been entitled to comment. We note that our superior Court has established a rule requiring an appellant to "demonstrate prejudice by stating what, if anything, would have been submitted to 'deny, counter, or explain' such new matter." *United States v. Chatman*, 46 M.J. 321, 323 (1997). The matter contained in the legal review of appellant's request for waiver of automatic forfeitures was explosive. We believe appellant met the low threshold established in *Chatman* when he stated in his appeal that he would have rebutted the assertions concerning his wife's involvement, if he had been aware of them, by referring to various matters within the record of trial which were inconsistent with that position.

■ The SJA was not required to prepare a legal review of appellant's request for waiver of automatic forfeitures, and our ruling in this case does not establish any such requirement. However, if the SJA does choose to prepare such a review of a request for waiver which is submitted before the record is completed, he or she must be careful. If the review contains anything which is not included in the appellant's request, it will clearly be outside the record because no record as yet exists. Under such circumstances, the only safe recourse would be to serve the review on the appellant for comment. Any review which the SJA prepares for the convening authority prior to completion of the SJAR should be attached to the SJAR when it is sent to the appellant. The SJA should also take care to ensure that such attachments become a part of the completed record of trial. Any legal review of a case for the convening authority, including those of forfeiture waiver requests, prepared after the SJAR is served on appellant should be treated as an addendum to the original SJAR and served on appellant for comment. Following this guidance should help avoid needless appellate litigation on this issue.

■ In appellant's case, it was error not to serve this extremely inflammatory document on appellant for comment before sending it to the convening authority for his action on the waiver request. Basic concepts of fairness and procedural due process demand such notice to appellant under the facts of his case. Air Force members have the right to be served with and respond to administrative letters of reprimand and performance reports which reflect adverse information before such documents can be placed in their official records. In light of such procedural protections on matters much less significant than a court-martial conviction and its resulting sentence, we find it impossible to find appellant was provided procedural due process in the handling of his request for waiver.

### FAILURE BY SJA TO ADVISE CONVENING AUTHORITY

### HE MUST CONSIDER DEFENSE SUBMISSIONS

Finally, appellant contends that the SJA erred by failing to inform the convening au-

thority that he must consider matters submitted by appellant before taking action in the case. This issue is mooted by our resolution of the first two assignments of error. However, as was noted earlier, although the SJA did fail to provide this advice, the convening authority's affidavit established that he had considered all matters submitted by the defense and this removed any possible prejudice to appellant based on this issue. Appellant's counsel conceded this point during oral argument before this court.

## CONCLUSION

The action of the convening authority is set aside. Appellant's case will be returned to the convening authority for a new staff judge advocate's recommendation and a new action by the convening authority.

Senior Judge PEARSON and Judge SPISAK concur.