UNITED STATES, Appellee,

v.

Staff Sergeant John W. BARRY, United States Army, Appellant.

ARMY 9801499.

U.S. Army Court of Criminal Appeals.

25 Nov. 2002.

For Appellant: Colonel Adele H. Odegard, JA; Major Jonathan F. Potter, JA; Captain Jimmonique R. Simpson, JA; Major Kirsten V.C. Brunson, JA (on brief); Lieutenant Colonel David A. Mayfield, JA; Major Mary M. McCord, JA.

For Appellee: Colonel David L. Hayden, JA; Major Anthony P. Nicastro, JA; Major Paul T. Cygnarowicz, JA (on brief).

Before CLEVENGER, CARTER, and STOCKEL, Appellate Military Judges.

OPINION OF THE COURT

CARTER, Judge:

A military judge sitting as a general court-martial convicted appellant, after mixed pleas, of desertion and violation of a lawful general regulation, in violation of Articles 85 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 885 and 892 [hereinafter UCMJ]. The adjudged sentence consisted of a bad-conduct discharge, confinement for fourteen months, and reduction to Private E1. The approved sentence was a bad-conduct discharge, confinement for 358 days, and reduction to Private E1. The case is before the court for review under Article 66, UCMJ, 10 U.S.C. § 866.

In three assignments of error, appellant asserts that he is entitled to a new action because of irregularities in the preparation and execution of the staff judge advocate's post-trial recommendation (SJAR) in his case. We agree that a new SJAR and action are warranted, although not entirely for the reasons raised in appellant's brief.

Facts

The available facts are not in dispute. On 24 July 1998, Major (MAJ) W, the chief of criminal law for the 10th Mountain Division (Light Infantry) and Fort Drum, was actively involved in coordinating personal jurisdiction over appellant for court-martial (App. Exs.VI, XIII, XIX). The charges of which appellant was convicted were preferred on 28 July 1998.[1] On 30 July 1998, MAJ W served as the government representative at appellant's pretrial confinement hearing before a military judge who concluded that continued pretrial confinement was warranted for appellant (App.Ex. IX). On 20 August 1998, appellant's battalion commander (the husband of MAJ W) forwarded appellant's charges with a recommendation for a general

1. An additional charge of wrongful use of cocaine was subsequently preferred and referred, but this charge and specification were dismissed at trial.

court-martial. On 12 September 1998, Major General (MG) M, the Commander of the 10th Mountain Division (Light Infantry) and Fort Drum, based upon the written pretrial advice of Lieutenant Colonel (LTC) M, his staff judge advocate (SJA), referred appellant's case to trial by a general court-martial.

Appellant's sentence was adjudged on 15 October 1998. The military judges authenticated the record of trial on 10 and 13 July 1999.

Earlier, on 2 June 1999, in preparation for the upcoming deployment of a portion of the 10th Mountain Division (Light Infantry) to Bosnia, the Secretary of the Army, pursuant to Article 22(a)(8), UCMJ, 10 U.S.C. § 822(a)(8), designated the Commander, "10th Mountain Division (Light Infantry) (Rear)," as a general court-martial convening authority (GCMCA).

On 19 July 1999, LTC M signed a SJAR addressed to the "Commander, 10th Mountain Division (Light Infantry) and Fort Drum" and recommended that, in accordance with appellant's pretrial agreement, the convening authority approve only so much of the sentence as provided for reduction to the grade of Private E1, confinement for 358 days, and a bad-conduct discharge. On 23 July 1999, Brigadier General (BG) S signed assumption of command orders for the 10th Mountain Division (Light Infantry) (Rear) and Fort Drum, effective 24 July 1999, the date that a portion of the 10th Mountain Division (Light Infantry), including the SJA (LTC M), apparently deployed to Bosnia.

On 27 July 1999, MAJ W, now serving as the "Staff Judge Advocate (Rear)" for the 10th Mountain Division (Light Infantry) (Rear) and Fort Drum, approved a request by appellant's trial defense counsel for twenty additional days to submit clemency matters under Rules for Courts–Martial [hereinafter R.C.M.] 1105 and 1106. However, the record contains no orders or other documentation transferring post-trial court-martial jurisdiction for appellant's case from the 10th Mountain Division (Light Infantry), located in Bosnia, to the 10th Mountain Division (Light Infantry) (Rear), located at Fort Drum.[2]

Appellant's original clemency petition, dated 17 August 1999, was addressed to the "Commander, 10th Mountain Division (Light Infantry) and Fort Drum." Appellant's trial defense counsel specifically asserted that MAJ W was disqualified from acting as the SJA in appellant's case because of: (1) her prior involvement in the case as the chief of criminal law, including actively assisting trial counsel from behind the bar during appellant's court-martial and participating in R.C.M. 802 conferences with the military judge; (2) her improper participation in the preparation of the SJAR signed by LTC M on 19 July 1999; and (3) her marriage to appellant's battalion commander who forwarded the charges. Appellant further objected to MAJ W acting on his post-trial case in any manner, including briefing appellant's clemency matters and LTC M's SJAR to the convening authority. Although appellant recognized that LTC M, and not MAJ W, had signed the SJAR, he nevertheless requested that the convening authority forward appellant's case to another SJA for preparation of a new SJAR.

In an undated SJAR addendum addressed to the "Commander, 10th Mountain Division (Light Infantry) and Fort Drum," LTC M responded to appellant's clemency petition. Lieutenant Colonel M advised the convening authority[3] that he, LTC M, and not MAJ W, prepared the SJAR and addendum in appellant's case. This addendum was served on appellant's trial defense counsel on 20 September 1999.

The record contains an undated memorandum from BG S, Commander, 10th Mountain Division (Light Infantry) (Rear) and Fort Drum, for MG C (successor to MG M), Commander, 10th Mountain Division (Light In-

---

2. "The record of trial and related documents ... shall be sent for action to the person exercising general court-martial jurisdiction over the accused at the time the court was convened (or to that person's successor in command)...." UCMJ art. 64(b), 10 U.S.C. § 864(b).

3. Notwithstanding the title of the GCMCA used in the "Memorandum For" line, it is clear from the context of the memorandum that LTC M was addressing BG S, the Commander of the 10th Mountain Division (Light Infantry) (Rear).

fantry), stating that his staff judge advocate, MAJ W, was disqualified from acting as his legal advisor in appellant's case under R.C.M. 1106(b) because she acted either as the trial counsel or assistant trial counsel. Brigadier General S asked MG C to appoint LTC M as his legal advisor to prepare the recommendation in appellant's case in accordance with R.C.M. 1106(c)(1)(A). On 22 September 1999, MG C signed an endorsement approving a faxed copy of BG S's request. There is nothing in the record to indicate that appellant's trial defense counsel, who was stationed at Fort Knox, Kentucky, knew of either of these memoranda until after action was completed in appellant's case.

By memorandum dated 30 September 1999, this time addressed to the "Commander, 10th Mountain Division (Light Infantry) (Rear) and Fort Drum," appellant's trial defense counsel submitted a rebuttal to the undated SJAR addendum which stated in part:

LTC [M] is not qualified to provide post-trial advice in SSG Barry's case.... MAJ [W] is currently serving in the statutory role as Staff Judge Advocate (Rear) to BG [S]. LTC [M], although the SJA for 10th Mountain Division, is currently serving in the statutory role as SJA for a separate GCMCA, MG [C], in Bosnia. Therefore, it is not appropriate for LTC M to provide a post-trial recommendation [SJAR] to BG [S], given the current configuration of General Court–Martial Convening Authorities. LTC [M] cannot pick and choose when he wants to provide advice to the GCMCA in the rear and when he wants to advise the GCMCA in Bosnia. Each GCMCA has his own SJA.... Therefore, as was suggested in the original request for clemency, SSG Barry's case ought to be transferred to a separate SJA and GCMCA for action. Furthermore, LTC M's predisposition against SSG Barry in this case, as expressed in the Addendum that ignores the statutory limitations on an SJA's role, should disqualify him from acting as the SJA on the case. Additionally, the Addendum never addresses the fact that the original [SJAR] was defective because SSG [S] prepared it under MAJ W's supervision. Therefore, the defense requests that

SSG Barry's case be properly transferred to a separate SJA and GCMCA for action.

Lieutenant Colonel M, while still in Tuzla, Bosnia, signed a supplemental addendum to the SJAR, dated 7 October 1999. The supplemental SJAR addendum, addressed to the "Commander, 10th Mountain Division (Light Infantry) and Fort Drum," but clearly meant for BG S, stated that LTC M was properly appointed as legal advisor for BG [S] by memorandum dated 22 September 1999. The supplemental SJAR addendum further stated:

The original [SJAR] was approved and signed by me as the Staff Judge Advocate. Major [W] did not act as the Staff Judge Advocate on this case other than to approve the defense request for an extension to submit matters, an administrative act. Therefore, I find that there is no legal error and no corrective action is necessary.

The supplemental SJAR addendum did not address whether the SJAR, or its addendum or supplemental addendum, which were all signed by LTC M, were prepared under MAJ W's supervision as alleged by appellant's trial defense counsel.

On 7 October 1999, the same date as the supplemental addendum to the SJAR, BG S took action on appellant's case. The record is silent as to by whom or how appellant's case was presented to BG S for decision and signature on 7 October 1999, since LTC M was still deployed in Bosnia. Both the action and the promulgating order state that BG S was the commander of the "10th Mountain Division (Light Infantry) and Fort Drum" at the time of his action, when in fact he was the commander of 10th Mountain Division (Light Infantry) (Rear) and Fort Drum. The record contains no orders indicating that BG S was in command of the 10th Mountain Division (Light Infantry) on 7 October 1999, a portion of which was deployed in Bosnia at the time under the command of MG C.

### Discussion

We recognize that operational requirements and deployments may make the rigid application of the Rules for Courts–Martial impracticable, or very difficult to satisfy, in some situations. *See, e.g.,* R.C.M. 305(m)(1).

Nevertheless, we hold that the combined effect of irregularities in the preparation and execution of the SJARs (addenda included) and action in this case materially prejudiced appellant's substantial post-trial processing rights under Article 60, UCMJ, 10 U.S.C. § 860, and R.C.M. 1106. *See* UCMJ art. 59(a), 10 U.S.C. § 859(a).

This case illustrates the importance of accuracy when describing commands and courts-martial convening authorities in courts-martial documents. A significant number of the legal memoranda in this case misstate the title of the command or the courts-martial convening authority concerned, thereby creating confusion as to the authority being exercised and the legal efficacy of the subsequent recommendations and decisions.

There were two lawfully appointed, separate, and distinct GCMCA's in this case: (1) the Commander, 10th Mountain Division (Light Infantry);[4] and (2) the Commander, 10th Mountain Division (Light Infantry) (Rear).[5] When BG S assumed command on 24 July 1999 of the "10th Mountain Division (Light Infantry) (Rear) and Fort Drum," he became a GCMCA for units and personnel assigned or attached to the 10th Mountain Division (Light Infantry) (Rear) for general courts-martial jurisdiction.

The combined effect of three errors in the post-trial processing of the SJARs and action in appellant's case warrants remedial action by this court. First, two of the three SJAR documents were addressed to the wrong convening authority, and one was signed before that particular SJA had legal authority to advise the convening authority for whom it was intended. All three SJAR documents signed by LTC M were prepared for the Commander, 10th Mountain Division (Light Infantry) and Fort Drum, but the last two were intended for the Commander, 10th Mountain Division (Light Infantry) (Rear). When LTC M signed his first addendum to the SJAR, which was clearly intended for BG S, the Commander of the 10th Mountain Division (Light Infantry) (Rear), LTC M had no authority to provide legal advice on military justice matters to that officer because he was not assigned, attached, or detailed for duty as a staff judge advocate in that general courts-martial jurisdiction. *See* UCMJ art. 6(a)–(b), 10 U.S.C. § 806(a)–(b) and 60(d), 10 U.S.C. § 860(d); R.C.M. 1106(a); *United States v. Gavitt,* 37 M.J. 761 (A.C.M.R.1993).

Second, as acknowledged by BG S in writing on 22 September 1999, BG S believed that MAJ W was disqualified from participating as the SJA in appellant's case because of her active involvement in the prosecution thereof. *See* UCMJ art. 6(c); R.C.M. 1106(b); *United States v. Gutierrez,* 57 M.J. 148, 149 (2002). On this record, we are unable to ascertain with any degree of certainty that MAJ W was not disqualified and did not draft one, two, or all three of the SJARs in this case, or that she did not provide oral advice to BG S regarding his action on 7 October 1999 after LTC M signed the SJAR addendum in Bosnia. *See* UCMJ art. 6(c); *United States v. Johnson–Saunders,* 48 M.J. 74, 75 (1998) (plain error for statutorily disqualified trial counsel to draft SJAR).

Finally, BG S's signed action in appellant's case inaccurately indicates that he was the Commander of the 10th Mountain Division (Light Infantry), a separate and independent command over which he had no general court-martial jurisdiction. When BG S took action on 7 October 1999, he was the Commander of the 10th Mountain Division (Light Infantry) (Rear), a different GCMCA. Most significantly, there are no orders or other documents in the record reflecting that the Commander, 10th Mountain Division (Light Infantry), who referred appellant's case to court-martial, ever subsequently transferred post-trial jurisdiction for appellant's case to the Commander, 10th Mountain Division (Light Infantry) (Rear). If it is impracticable for a convening authority to take action

---

**4.** *See* UCMJ art. 22(a)(5) (a division commander may convene a general courts-martial).

**5.** Due to his special designation as a GCMCA by the Secretary of the Army under Article 22(a)(8), UCMJ. Merely being the commander of a "fort," such as Fort Drum, makes one a special court-martial convening authority, not a GCMCA. *See* UCMJ art. 23(a)(2), 10 U.S.C. § 823(a)(2).

in a case he convened because of an overseas deployment, the convening authority may forward that case to another GCMCA for action, but the record should include a statement of the reasons why the original convening authority did not act. *See* R.C.M. 1107(a) and discussion thereto; *United States v. Solnick,* 39 M.J. 930 (N.M.Ct.Crim.App.1994); Army Reg. 27–10, Legal Services: Military Justice, paras. 5–2b(1) and 5–32 (6 Sep. 2002). Absent such a documented transfer of jurisdiction, action in a case must be taken by the same GCMCA who convened the court-martial or his successor in command. *See United States v. Brown,* 57 M.J. 623 (N.M.Ct.Crim.App.2002).

Rather than return this case for a fact-finding hearing [6] for clarification of the respective orders and responsibilities and a determination of exactly what happened in the post-trial processing of appellant's case, as a matter of judicial economy, we will take other remedial action.

### Decision

The action of the convening authority, dated 7 October 1999, is set aside. The record of trial will be returned to The Judge Advocate General for a new action by the same or a different convening authority in accordance with Article 60(c)–(e), Uniform Code of Military Justice.

Judge CLEVENGER and Judge STOCKEL concur.

---

**6.** *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967).