UNITED STATES ARMY COURT OF CRIMINAL APPEALS

 Before
 TOZZI, HAM, and SIMS
 Appellate Military Judges

 UNITED STATES, Appellee
 v.
 Private E1 DUSTIN A. STEFAN
 United States Army, Appellant

 ARMY 20081097

 Headquarters, 82d Airborne Division
 Gary J. Brockington, Military Judge
 Lieutenant Colonel Gregg A. Engler, Acting Staff Judge Advocate (pretrial)
 Major Nelson J. Van Eck, Acting Staff Judge Advocate (recommendation)
 Major Kaiesha N. Wright, Acting Staff Judge Advocate (addendum)

For Appellant: Major Timothy W. Thomas, JA; Captain Jess B. Roberts, JA.

For Appellee: Pursuant to A.C.C.A. Rule 15.2, no response filed.

 29 January 2010

 -----------------------------------
 SUMMARY DISPOSITION
 -----------------------------------

SIMS, Judge:

 On consideration of the entire record, including consideration of the
issues personally specified by appellant, we hold the findings of guilty
and the sentence as approved by the convening authority correct in law and
fact. Accordingly, those findings of guilty and the sentence are AFFIRMED.

Chief Judge TOZZI concurs.

HAM, Judge, dissenting:

 I dissent from my brethren’s summary affirmance and would return this
case for a new post-trial review and action. In my view, a disqualified
officer served as staff judge advocate (SJA) and advised the convening
authority during the post-trial process.

 A military judge sitting as a general court-martial convicted
appellant, pursuant to his pleas, of failing to go to his appointed place
of duty (two specifications), willfully disobeying a noncommissioned
officer, failing to obey a lawful order, willfully damaging military
property, wrongful possession of marijuana, larceny (seven specifications),
and burglary, in violation of Articles 86, 91, 92, 108, 112a, 121, and
129, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 891, 892, 908,
912a, 921, and 929 [hereinafter UCMJ]. The military judge sentenced
appellant to a dishonorable discharge, confinement for twenty-two months,
and total forfeiture of all pay and allowances. Pursuant to a pretrial
agreement, the convening authority approved only so much of the adjudged
sentence as provided for confinement for eighteen months, and otherwise
approved the adjudged sentence. The convening authority ordered appellant
credited with 109 days of confinement credit against the sentence to
confinement. Appellant submitted the case for our review on its merits.

 BACKGROUND

 MAJ Wright wore numerous hats throughout this case. Appearing first
in the record of trial on 9 October 2008, as “Chief, Military Justice,” MAJ
Wright signed the referral of both the charges and additional charges.
Next, MAJ Wright appeared on 14 October 2008, as “Trial Counsel,” and
served the referred charges and additional charges on appellant. Third, on
6 May 2009, MAJ Wright, acting again as “Chief, Military Justice,” granted
trial defense counsel’s request for an extension of time to submit post-
trial matters.[1] On 2 June 2009, MAJ Wright signed the promulgating order
and the Chronology Sheet, DD Form 490 as “Acting Staff Judge Advocate.”
Again on 2 June 2009, MAJ Wright signed the Court-Martial Data Sheet, DD
Form 494, as “Trial Counsel,” “Convening Authority or His/Her
Representative,” and “Staff Judge Advocate of General Court-Martial
Convening Authority or Reviewing Judge Advocate.”

 Most importantly, on 2 June 2009, MAJ Wright served as the acting SJA
in this case, and signed the addendum to the Staff Judge Advocate’s
Recommendation (SJAR), wherein MAJ Wright opined that she had “considered
[the defense post-trial submissions] and in [her] opinion, clemency is not
warranted.” I believe MAJ Wright wore too many hats in this case, and was
disqualified from rendering advice to the convening authority. [2]
 LAW

 “[T]he convening authority is an accused’s last best hope for
clemency.” United States v. Hamilton, 47 M.J. 32, 35 (C.A.A.F. 1997)
(citing United States v. Cook, 46 M.J. 37, 39 (C.A.A.F. 1997)). “Clemency
is the heart of the convening authority’s responsibility at that stage of
the case,” id., and is “[o]ne of the distinguishing features of the
military justice system.” United States v. Finster, 51 M.J. 185, 186
(C.A.A.F. 1999) (reviewing history of commander’s clemency power). The
commander’s power to modify the findings and/or sentence for the benefit of
the soldier is “based on the responsibility of a military commander for the
state of discipline and justice in the command.” Id.

 Prior to acting on the record of any general court-martial or special
court-martial the sentence in which includes a bad-conduct discharge or
confinement for one year, the convening authority must obtain the
recommendation of his SJA or legal officer. R.C.M. 1106)(a). See Article
60(d), UCMJ.

 Because of the significance of the convening authority’s action
 in the military justice system, the recommendation of the staff
 judge advocate . . . is enormously important. . . [It is] much
 more than a ministerial action or mechanical recitation of facts
 concerning the trial. Its heart and soul exist in the judgment
 of the drafter as to whether the adjudged sentence is
 appropriate and whether clemency is warranted.

Finster, 51 M.J. at 187 (quoting United States v. Cunningham, 44 M.J. 758,
763 (N.M. Ct. Crim. App. 1996)).[3] See also Edwards, 45 M.J. at 116
(stating that, due to the SJA’s advisory function under Article 60(d) and
R.C.M. 1106, “he plays a pivotal role in an accused’s chances for relief”)
(citing United States v. Curry, 28 M.J. 419 (C.M.A. 1989)).

 “Congress underscored the critical role of the SJA in the post-trial
process by establishing criteria that disqualify a person from acting as an
SJA in designated situations.” Finster, 51 M.J. at 186.

 No person who has acted as a member, military judge, trial
 counsel, assistant trial counsel, defense counsel, assistant
 defense counsel, or investigating officer in any case may later
 act as a staff judge advocate or legal officer to any reviewing
 authority upon the same case.

 Article 6(c), UCMJ. See R.C.M. 1106(b).[4] The purpose of this
provision is to “assure the accused a thoroughly fair and impartial
review.” United States v. Coulter, 3 U.S.C.M.A. 657, 659, 14 C.M.R. 75, 77
(1954). This prohibition extends beyond signing the post-trial documents
and personally advising the convening authority—a disqualified officer may
not even prepare the post-trial documents recommending a course of action
in a case. Johnson-Saunders, 48 M.J. at 75 (holding that new review and
action were required where trial counsel, in her capacity as “Acting Chief,
Military Justice,” drafted the SJAR). See also United States v. Spears, 48
M.J. 768, 775 (A.F. Ct. Crim. App. 1998) (error for trial counsel to
prepare and sign a staff summary sheet containing a recommendation; Article
6(c) establishes “a rule of basic fairness which prevents a trial counsel
from preparing any legal review for, or making any recommendation to, the
convening authority at any stage of the post-trial process”); United States
v. McCormick, 34 M.J. 752, 755 (N.M.C.M.R. 1992) (returning case for new
review and action where trial counsel drafted SJAR, despite fact that it
was subsequently “filtered through two [SJAs]”).[5] Accordingly,
disqualification “cannot be said to be a technical matter without impact on
the outcome of [the] proceedings.” Edwards, 45 M.J. at 116. Rather, a
“disqualified [officer’s] participation in the post-trial review process is
a serious deficiency.” United States v. Taylor, 60 M.J. 190, 194 (C.A.A.F.
2004).

 In addition to any statutory disqualification, we also consider
whether a “disinterested observer [would] doubt the fairness of the post-
trial proceedings.” Johnson-Saunders, 48 M.J. at 75, or whether a
“reasonable observer would no longer feel confident that [a non-statutorily
disqualified officer] remained neutral when he advised the convening
authority concerning [a]ppellant’s clemency request.” Taylor, 60 M.J. at
194. Applying these principles, our superior court has stated that a non-
statutorily disqualified officer can properly advise the convening
authority post-trial despite providing “general advice” to the trial
counsel or investigating officers. See United States v. Willis, 46 C.M.R.
112, 114 (C.M.A. 1973). When, however, one “move[s] from the role of
advis[o]r to the role of participant . . . he [or she] is disqualified from
later performing any inconsistent function.” Id. See United States v.
Gutierrez, 57 M.J. 148, 149-50 (C.A.A.F. 2002) (finding chief of military
justice disqualified from acting as SJA in post-trial process where she
“actively participated in the preparation of the case against appellant,”
and “crossed the line from advisor to active participant when she actively
participated in a prosecutorial capacity to orchestrate the timing of the
[pretrial] investigation to force the defense to assume responsibility for
the delay”). See also generally United States v. Barry, 57 M.J. 799 (Army
Ct. Crim. App. 2002) (returning case for new action due to combined effect
of irregularities, noting that convening authority believed the chief of
military justice was disqualified from participating as SJA in the post-
trial process “because of her active involvement in the prosecution
thereof,” including coordinating personal jurisdiction over appellant and
appearing as government representative at pretrial confinement hearing)
(citations omitted).

 The main concern underlying disqualification, statutory or otherwise,
is that the officer providing the recommendation “must be neutral. The
recommendation of a biased . . . officer could unfairly prejudice the
convening authority’s decisions.” United States v. Rice, 33 M.J. 451, 453
(C.M.A. 1991). See also Taylor, 60 M.J. at 193 (stating that both
convening authorities and staff judge advocates “who carry out ‘those
important [post-trial] statutory responsibilities be, and appear to be,
objective”) (quoting United States v. Dresen, 47 M.J. 122, 124 (C.A.A.F.
1997)). “Maintaining these individuals’ neutrality protects two important
interests: (1) the accused’s right to a fair post-trial review; and (2) the
system’s integrity.” Id.

 DISCUSSION

 Preliminarily, MAJ Wright was statutorily disqualified from advising
the convening authority on the case because she served the referred charges
on the accused in her capacity as the trial counsel in the same case.
R.C.M. 602 (The “trial counsel detailed to the court-martial to which
charges have been referred for trial shall cause to be served upon each
accused a copy of the charge sheet.”)

 Even in the absence of MAJ Wright’s admittedly limited and largely
administrative role as trial counsel, she acted throughout the case as the
“Chief, Military Justice” until her turn as acting SJA during the post-
trial phase. In my view, the chief of military justice in today’s Army
cannot fill the neutral role required in the post-trial process and is
disqualified from advising the convening authority.

 The term “chief of military justice,” or “chief of criminal law,” is
not recognized or defined by the UCMJ or the Manual for Courts-Martial. See
R.C.M. 103 (Definitions and Rules of Construction), 501 (Composition and
personnel of courts-martial), 502 (Qualifications and duties of personnel
of courts-martial). See also Article 27, UCMJ (Detail of trial counsel and
defense counsel). The terms are also not defined by the Army’s primary
military justice regulation or other regulations setting forth doctrine in
the Army’s Judge Advocate General’s Corps. See AR 27-10,[6] Army Reg. 27-
1, Legal Services: Judge Advocate Legal Services (30 September 1996).
Because the position is not one established or recognized by the Manual for
Courts-Martial, it is not surprising that it is not included in the
disqualification provisions contained in the UCMJ or the Rules for Courts-
Martial.

 The lack of formal definition of terms or regulatory detailing of the
duties of the chief of military justice should not, however, blind us as
senior Army judge advocates to either reality or common sense. We are
acutely aware of the nature of the chief of military justice’s duties in
today’s Army. While the SJA remains “above the fray,” in order to be able
to provide neutral advice to the convening authority, in contrast, the
chief of military justice is—and should be—directly “in the fray.” Even
when not appearing on behalf of the government at trial, the chief of
military justice is behind the scenes pulling the prosecutorial strings.
The chief of military justice is directly involved—in a prosecutorial
capacity—in all aspects of general and special courts-martial (and many
other lesser actions) that take place within the general court-martial
jurisdiction.[7] He or she is in reality the chief prosecutor for the
installation or general court-martial jurisdiction, a de facto member of
the prosecution team. Cf. Sorrell, 47 M.J. at 433-34 (declining to answer
contention that chief of military justice is disqualified from providing
post-trial advice “because he was a member of the prosecution team,”
finding any error “harmless under the specific circumstances of this
case”). Accord Hamilton, 47 M.J. 32, 34 (declining to decide whether term
“trial counsel” in Article 6(c), UCMJ and R.C.M. 1106(b) “extends beyond
the person who prosecutes in the name of the United States in the courtroom
and includes all persons who act on behalf of the United States prior to
trial,” and thus whether chief of military justice was disqualified because
actions “did not materially prejudice the substantial rights of
appellant”).

 The chief of military justice’s hands are on every general and special
court-martial that takes place within a general court-martial jurisdiction.
 He performs much more than a training and advisory role, however, and is
certainly more than a “paper-pusher,” or one who acts merely in an
administrative capacity.[8] The chief of military justice’s duties in
every case under his supervision include, but are not limited to:

 (1) coordinating with trial counsel and investigative agents to
 shape the investigation;
 (2) serving as the primary point of contact for civilian law
 enforcement and prosecutorial officials in the surrounding
 community for all military justice matters, including which
 entity will undertake prosecution for an offense occurring in
 areas of shared jurisdiction;
 (3) advising, working with, and directing trial counsel which
 soldiers to seek the commander’s order to confine or
 otherwise restrain prior to trial;
 (4) directing and recommending which charges should be
 preferred, reviewing and editing charges prior to preferral;
 (5) tracking the speedy trial clock, ensuring appropriate
 authorities act on requested delays, and, in particular
 documenting defense delays and ensuring as much delay as
 possible is borne by the defense and not the prosecution;
 (6) reviewing the evidence, and deciding whether further
 investigation is necessary prior to referral;
 (7) setting the parameters of pretrial negotiations and terms
 likely acceptable to the convening authority, as well as
 office policies concerning pretrial negotiations and those
 with authority to engage in them;
 (8) discussing and directing discovery, witness production, and
 trial strategy and tactics;
 (9) directing and mentoring trial counsel on how to best
 advocate the government’s position in court, including
 practicing opening and closing statements and sentencing
 arguments, as well as shaping direct and cross-examinations
 of witnesses;
 (10) sitting in the courtroom discussing events at trial as they
 occur regardless of whether the chief of military justice is
 acting in court as the trial or assistant trial counsel,
 including passing notes to the trial counsel in real time;
 (11) attending R.C.M. 802 conferences and post-trial “bridge-the-
 gap” sessions with the military judge and trial counsel; and
 conducting after action reviews of trial performance and
 results.

 In addition, no action in any general or special court-martial gets to
the general court-martial convening authority (GCMCA) without the stamp of
approval of the chief of military justice—in many instances, the action is
initiated, directed, or shaped by him. Simply stated, the modern chief of
military justice in the Army is in no way, shape, or form—not in concept or
execution—“neutral,” and has no business advising the convening authority
in the post-trial process. The reality is that the chief of military
justice is an “active participant” in every general and special court-
martial not as neutral arbiter or one who merely provides general advice,
but as a prosecutor. Any disinterested observer would rightly have serious
doubts about the fairness of any post-trial process that allowed the unit’s
chief prosecutor to provide such critical advice. See Johnson-Saunders, 48
M.J. at 75. See also Sorrell, 47 M.J. at 434 (Sullivan, J., concurring in
part and in the result and dissenting in part) (“Our clemency process is
too important a step in our military justice system to have even the hint
of anything irregular as part of the process.”).

 MAJ Wright’s persistent involvement in this case is evident in
documents as the case progressed through court-martial to action. On one
day, MAJ Wright signed the referral on the back of the charge sheet and
additional charge sheet; a few days later, MAJ Wright served the accused
the referred charges and additional charges as trial counsel; after trial,
MAJ Wright granted a defense counsel’s request for additional time to file
post-trial matters, a function she is not authorized to perform. Later
still, MAJ Wright summarized appellant’s clemency submission to the
convening authority, and, in the last word prior to the convening
authority’s decision, advised him that “in [her] opinion, clemency is not
warranted.” The GCMCA agreed, and granted none. That same day, MAJ Wright
signed additional documents as “trial counsel.”[9]

 Although documents in the record of trial and allied papers in this
case reflect some of the chief of military justice’s involvement, we should
not normally expect to see visible evidence of the integral role he plays
in this or any other case either through testimony or documents. That does
not mean it is absent. If the chief is doing his job—and we must presume
in absence of evidence to the contrary that he is—his active involvement on
the prosecution side goes far, far beyond providing “general advice” to the
trial counsel. Rather, it is woven into the fabric of the case from start
to finish. Accordingly, the chief of military justice should have nothing
to do with advising the convening authority after trial concerning whether
the convening authority should exercise his discretion to grant or deny
clemency, a critical and unique feature of the military justice system.

 In addition to finding that a disqualified official advised the
convening authority in this case, I would also find appellant has met the
low standard for demonstrating prejudice in the post-trial context. United
States v. Wheelus, 49 M.J. 283, 289 (C.A.A.F. 1998). See also Taylor, 60
M.J. at 195. Appellant’s clemency submission focused on attempting to
secure approval of a bad-conduct discharge, rather than the adjudged more
severe dishonorable discharge. In fact, trial defense counsel’s post-trial
submission states that appellant forbade him from requesting that the
convening authority grant clemency by reducing appellant’s confinement. In
light of the highly discretionary nature of the convening authority’s
clemency decision, I cannot conclude that a disqualified official’s
participation is harmless. Id. (“By definition, assessments of prejudice
during the clemency process are inherently speculative. Prejudice, in a
case involving clemency, can only address possibilities in the context of
an inherently discretionary act.”) (citation omitted). This case demands
at least a new addendum and action by an officer “not affiliated with the
prosecution who can consider this case in an impartial manner.” Edwards,
45 M.J. at 117 (citations omitted). “[R]egardless of the new action’s
outcome, the military justice system’s integrity will be protected from a
disqualified individual influencing the outcome of [a]ppellant’s post-trial
review.” Taylor, 60 M.J. at 196.

 For these reasons, I dissent.

 FOR THE COURT:

 MALCOLM H. SQUIRES, JR.
 Clerk of Court
-----------------------
[1] Only the convening authority or the SJA may, for good cause, grant an
extension to submit post-trial matters; “only the convening authority may
deny a request for such an extension.” Rule for Courts-Martial
[hereinafter R.C.M.] 1105(c)(1).

[2] Because the document at issue is the addendum to the SJAR, the defense
counsel

 (continued . . .)
(. . . continued)
had no opportunity to object to MAJ Wright’s involvement in the post-trial
process. As a result, waiver does not apply. See United States v. Holt,
38 M.J. 682, 683 (A.F.C.M.R. 1993). Cf. United States v. Edwards, 45 M.J.
114, 116 (C.A.A.F. 1996) (finding waiver to disqualified officer’s
involvement with SJAR “not appropriate where defense counsel was not fully
aware of the circumstances of disqualification”) (citations omitted). Even
where an accused has an opportunity to object, our superior court has found
that failure to do so does not result in waiver. United States v. Johnson-
Saunders, 48 M.J. 74, 75 (C.A.A.F. 1998).

[3] This statement applies with equal vigor to the addendum to the SJAR,
the document at issue here. Further, following the latest amendments to
R.C.M. 1106,

 (continued . . .)

(. . . continued)
the “heart and soul” are essentially all that remain of the greatly
truncated SJAR. See Exec. Order No. 13468, 73 Fed. Reg. 43831 (July 28,
2008). See also generally Finster, 51 M.J. at 186-87 (recounting history
of the SJAR through changes implemented by Military Justice Act of 1983,
Pub. L. 98-209, 97 Stat 1396-97).

[4] An SJA is also disqualified if he has “other than an official interest”
in the case, meaning “a personal interest or feeling in the outcome of a
particular case.” United States v. Sorrell, 47 M.J. 432, 433 (C.A.A.F.
1998).

[5] The McCormick court stated further that it “doubt[ed] that any public
confidence in the integrity and impartiality of a process could be garnered
when that process affords disqualified persons an ‘inside track’ for
advancing their views and then purports to cloak those views with the
mantle of impartiality.” Id. at 755-56.
[6] AR 27-10 briefly discusses one of the functions of the chief of
military justice, who, along with the SJA, serves as the primary supervisor
and trainer of trial counsel. This partial description of the chief of
military justice’s duties is contained in the portion of the regulation
that describes the Trial Counsel Assistance Program (TCAP), and sets forth
the interrelationship and interaction of the chief’s role as trainer with
TCAP’s mission, which is to “provide assistance, resources, and support for
the prosecution function throughout the Army and to serve as a source of
resolution of problems encountered by trial counsel,” but does not define
the term or further describe the chief of military justice’s other duties.
AR 27-10, para. 22-2.

[7] Since the organization of the Army into modular force brigade combat
teams (BCT), a trial counsel is assigned to every BCT. However, while in
garrison, the trial counsel “work[s] at the Office of the Staff Judge
Advocate (OSJA) military justice section . . . the [trial counsel’s]
primary duty location while in garrison is the OSJA military justice
section.” Policy Memorandum from the Judge Advocate General to Judge
Advocate legal Services Personnel, Subject: Location, Supervision,
Evaluation, and Assignment of Judge Advocates in Modular Force Brigade
Combat Teams – Policy Memorandum 08-1 (17 April 2008), para. 3. Further,
the trial counsel is “supervised by the OSJA chief of military justice
during garrison operations.” Id. at para 4. The chief of military justice
also normally serves as the trial counsel’s rater, apart from those trial
counsel assigned to a BCT, where the Brigade Judge Advocate fills that
role.

[8] Compare United States v. Grimm, 6 M.J. 890, 893-94 (A.C.M.R. 1979),
where the court described the duties of the chief of criminal law as
“administrative in nature . . . monitoring pretrial and post-trial
processing with a view to speedy and just
disposition.” In Grimm, the court found that chief of criminal law, as the
position was primarily known at the time (and which some offices still call
it) was
“the alter ego of the [SJA] in the field of criminal law . . . not a
prosecutorial

 (continued . . .)

(. . . continued)
function . . . .” Id. See also United States v. Marsh, 21 M.J. 445, 448
(C.M.A. 1986) (then existing Dep’t of Army Pam. 27-5, Staff Judge Advocate
Handbook (1963) did not “indicate that the chief of military justice is
intended to be a chief prosecutor or to perform prosecutorial duties”).
[9] This court has previously recognized that “operational requirements and
deployments” may make the Rules for Courts-Martial and the UCMJ
“impracticable, or very difficult to satisfy, in some situations.” Barry,
57 M.J. at 801. Like some other installations, Fort Bragg is the home of a
number of GCMCAs. One practical solution when one GCMCA deploys is to
request that another GCMCA remaining on post accept transfer of those cases
remaining, both pre and post-trial. See R.C.M. 1107.